James E. RAMSEY, Appellant,

v.

UNITED STATES, Appellee.

No. 88–356.

District of Columbia Court of Appeals.

Submitted Sept. 21, 1989.
Decided Jan. 19, 1990.

Walter S. Booth, Washington, D.C., was on the brief, for appellant.

Jay B. Stephens, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty. at the time the briefs were filed, and Sharon M. Collins,

Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before FERREN and BELSON, Associate Judges, and PRYOR, Senior Judge.

FERREN, Associate Judge:

The trial court denied without a hearing appellant's motion, pursuant to D.C.Code § 23-110 (1989),[1] to vacate his sentence. Appellant argues he was denied effective assistance of counsel in December 1979 when he pleaded guilty to one count of assault with intent to rape, id. § 22-501 (1989), for which he received probation (revoked four years later). Appellant now asserts his innocence and claims he would not have pleaded guilty if counsel had not erroneously informed him that his cousin had made a statement to the police and was prepared to testify against him at trial. The record includes a recent affidavit from appellant's cousin attesting that he never made a statement to the police about appellant and that he never agreed to testify against appellant. This case accordingly presents two questions: (1) whether appellant is barred from collaterally attacking his guilty plea on the ground of ineffective assistance of counsel because he failed to appeal the revocation of his probation and to raise the ineffectiveness issue then; and, if not, (2) whether appellant is entitled to an evidentiary hearing on his claim. We perceive no such bar and reverse and remand for an evidentiary hearing.

## I.

On December 10, 1979, on advice of counsel and in exchange for the government's agreement to drop the rape charge against him,[2] appellant pleaded guilty to one count of assault with intent to rape, id. The government proffered that its evidence at trial would have shown the following: On the evening of December 22, 1978, appellant had been at his cousin R.C. Hooker's apartment, along with a few of Hooker's friends. At some point after midnight, Hooker and his brother left the apartment with two women, leaving appellant alone in the apartment. At approximately 4:00 a.m., appellant knocked on the door of complainant, who lived in the same building as Hooker. Complainant answered the door, thinking it was Hooker, her boyfriend. Appellant entered the apartment, smelling of alcohol. Complainant asked appellant to leave, but appellant grabbed her, forced her into the bedroom, and had sex with her against her will. A knock on the door interrupted appellant; he decided to go back to his cousin's apartment. Complainant dialed Hooker's apartment for help. Appellant intercepted the call and hung up after a brief conversation. Shortly thereafter, Hooker reached complainant by telephone. Complainant asked Hooker to come to her apartment. When Hooker arrived, complainant told him what had happened. Hooker then returned to his apartment, "beat up" appellant, and called the police. Appellant was arrested on the scene.

Appellant originally denied having had sexual intercourse with complainant.[3] Appellant later testified before a grand jury that he had been looking for Jewel Morton, a friend who lived in the building, when he mistakenly knocked on complainant's door. He further testified that complainant had allowed him to enter her apartment and had consented to have sex with him. Morton told the grand jury, however, that appellant knew she was not home that night and, therefore, would not have been looking for her.

The government did not indicate during its proffer what witnesses it would have called at trial, although at one point in the plea hearing the prosecution identified

---

1. Appellant filed his motion pursuant to 28 U.S.C. § 2255 (1982), but the trial court properly treated it as a motion under D.C.Code § 23-110 (1989).

2. The government also agreed not to argue for a change in appellant's bond status and not to take a position on his sentence.

3. The government indicated, both in court and on appeal, that appellant had given a statement to police denying he had had sex with complainant. That statement is not in the record.

Hooker as a government witness. During the plea colloquy, appellant acknowledged that he was guilty and that he was satisfied with the advice counsel had given to him.[4]

The court accepted appellant's plea and, at a later hearing, sentenced him to five to fifteen years in prison, suspended execution of sentence, and imposed a five-year period of probation. After a conviction in Virginia over four years later for unauthorized use of a vehicle,[5] the trial court revoked appellant's probation and, on June 6, 1984, reimposed the original sentence of five to fifteen years of incarceration. Appellant was represented at the revocation hearing by the lawyer who had counseled him in connection with the plea. Appellant did not appeal the revocation of his probation.[6]

## II.

Over three and one-half years later, on February 24, 1988, appellant filed a pro se motion to vacate, set aside, or correct sentence. The motion essentially amounted to a claim of ineffective assistance of counsel[7] based on two grounds: (1) counsel's failure to ascertain whether appellant's cousin, Hooker, had given a statement to the police,[8] and (2) counsel's failure to advise him properly concerning the potential weight of Hooker's testimony.[9] Appellant stated several times in the motion that he would not have pleaded guilty had it not been for counsel's representation (and appellant's resulting belief) that appellant's cousin had given a statement to the police and would testify against appellant.

On March 7, 1988, the trial court denied the motion without an evidentiary hearing on two grounds. First, citing *Head v. United States*, 489 A.2d 450 (D.C.1985), the court stated that it "cannot grant relief when a defendant has failed to raise an available challenge to his conviction on appeal unless the defendant makes a showing of exceptional circumstances for his failure to raise the issues on appeal and prejudice as a result of this failure." Finding no exceptional circumstances for his failure to appeal, the court ruled appellant was barred from raising his sixth amendment claim at this late date. Second, the court found that even if it could consider appellant's motion, "the conclusory allegations contained in the motion fail to raise any real claims of ineffective assistance of counsel." Appellant promptly filed a pro se motion for reconsideration and "arguments for petition for writ of habeas corpus"; he attached an affidavit from Hooker stating that Hooker had never given a

---

**4.** The court explained to appellant that by pleading guilty, he would be waiving his right to a trial, his right against self-incrimination, and his right to an appeal. Following each explanation, appellant stated that he understood the right he was waiving. Appellant also stated that he was freely choosing to plead guilty and that he had not received any promise about his sentence.

**5.** On April 25, 1984, a Virginia court sentenced appellant to a five-year prison term for this offense.

**6.** Appellant claims in his "petition for appeal" that counsel did not inform appellant that he had the right to appeal the revocation of his probation. Appellant, however, did file a pro se motion to reduce sentence, which the trial court denied on June 28, 1984.

**7.** Appellant's self-styled motion includes phrases such as "violation of due process," "coerced confession," "plea was not voluntarily and intelligently made," and "privilege against self-incrimination" in addition to "incompetent assistance of counsel." The facts alleged in the motion, however, best support a theory of ineffective assistance of counsel, and we will treat the motion as having raised that claim.

**8.** The motion states in part:

Counsel stated to petitioner that his first cousin had given the police a statement and was coming to court to testify against him at trial.... Counsel never explained to petitioner that he had a right to review the police statement which had been obtained by the prosecution, which ... influenced the guilty plea in the case, when he knew that there wasn't no statement given by no one other than the victim....

**9.** The motion further states:

Petitioner had no intention to plea guilty to a crime which he did not commit, petitioner stated to counsel that his cousin['s] testimony would not be any good in court because he wasn't there when he had sex with the lady. Counsel stated he was going to testify and the jury would believe the word of two before they take the word of one.

statement to the police and had never intended to testify against appellant.[10] The court denied appellant's motion for reconsideration.[11]

### III.

In his "petition for appeal," appellant asserts his innocence. He states that both he and complainant were at Hooker's apartment when Hooker and his brother left with two women. According to appellant's petition, complainant left the party shortly thereafter, announcing that she was returning to her own apartment now that her boyfriend had left with another woman. Because Hooker had still not returned some time later, appellant left Hooker's apartment and knocked on complainant's door. Complainant invited him in and sat next to him on the living room couch. She asked appellant about the woman with whom Hooker had left the party. Appellant and complainant, according to appellant's petition, then engaged in consensual sexual intercourse. During this time there was a knock on the door. Complainant advised appellant to ignore the knock, as it might be Hooker. When appellant left complainant, he returned to Hooker's apartment. Hooker was there and asked where appellant had been. Appellant replied that he had been "out." Hooker left a few minutes later and then returned, accusing appellant of "back-stabbing him" with complainant. A fight took place during which Hooker punched appellant. Appellant was arrested at approximately 7:00 a.m. and charged with rape.[12]

Appellant now renews, on appeal, his argument that he was denied his sixth amendment right to effective assistance of counsel, citing trial counsel's failure to investigate and to advise appellant properly. He argues that he is entitled to an evidentiary hearing on his claims. Appellant cites the statutory language of § 23–110(c) and several cases from this court, including *Pettaway v. United States*, 390 A.2d 981 (D.C.1978), for the proposition that there is a strong presumption in favor of conducting a hearing on § 23–110 motions. He stresses that the presumption favoring a hearing is particularly strong in cases such as this concerning alleged ineffective assistance of counsel, citing *Gibson v. United States*, 388 A.2d 1214 (D.C.1978). Moreover, he argues that Hooker's affidavit creates a material factual issue which can only be resolved by an evidentiary hearing.

Appellant also argues that he in no way "slept on his rights" and should not be barred from raising his constitutional claim on that ground. He points out that he began filing a series of pro se motions to reduce his sentence less than one week after his probation was revoked. He notes that he was represented at the probation revocation hearing by his original counsel and that counsel never advised him of his right to appeal that ruling.

The government replies that appellant's failure to raise the ineffectiveness claim on direct appeal of his probation revocation bars him from raising it now—more than eight years after his conviction and almost four years after his probation was revoked. The government stresses that to allow appellant's claim to be heard would "reward[ ] indifference to his rights and encourage[ ] claims that the sheer lapse of time suggests are fabricated." While ac-

---

**10.** Hooker's affidavit says: "On or about 12/24/1978, I the affiant never gave no statement to no police concerning the petitioner about no charge, and nor was I ever going to testify against the petitioner at trial or at any other time."

**11.** In a letter dated March 23, 1988, Judge Shuker, through his law clerk, informed appellant, in response to his motion for reconsideration and "arguments for petition for writ of habeas corpus," that

[T]he judge denied a similar request for relief on March 5, 1988. Pursuant to D.C.Code § 23–110(e), the Court is not required to entertain a second or successive motion for similar relief on behalf of the same prisoner. In light of his ruling of March 5, Judge Shuker finds it unnecessary to entertain your most recent requests for relief.

We treat this as a denial of appellant's motion.

**12.** In his "petition," appellant claims that Hooker gave complainant "an ultimatum of getting [appellant] Ramsey locked up or breaking up the relationship." Hooker's affidavit does not mention such an ultimatum.

knowledging that *Shepard v. United States*, 533 A.2d 1278 (D.C.1987), is not controlling,[13] the government urges that we assess the likely prejudice to the government caused by the delay before reaching the merits of appellant's collateral attack.

The government further contends that, even if appellant's claim is not stale, appellant is not entitled to a hearing. It cites *Miller v. United States*, 479 A.2d 862, 869 (D.C.1984), as one of several cases that concludes a hearing is not required on a § 23–110 motion if "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." The government argues that whatever misinformation trial counsel may have given appellant before his plea, it was corrected by the government's proffer of evidence in open court at the plea hearing. The government does not address the question whether Hooker's affidavit creates a material factual issue that requires a hearing to resolve.

### IV.

#### A.

▮▮▮ This court has repeatedly expressed its concern that D.C.Code § 23–110 not be used as a substitute for direct relief. *See, e.g., Shepard v. United States*, 533 A.2d 1278 (D.C.1987); *Head v. United States*, 489 A.2d 450 (D.C.1985). In *Head*, we stated that "[r]elief under § 23–110 is appropriate only for serious defects in the trial which were not correctable on direct appeal or which appellant was prevented by exceptional circumstances from raising on direct appeal." 489 A.2d at 451. Our decision in *Head*, however, does not bar appellant from raising his sixth amendment claim on collateral attack. Ineffective assistance of counsel is the type of serious defect which is typically not correctable on direct appeal and is therefore an appropriate ground for a collateral attack. *See Proctor v. United States*, 381 A.2d 249, 252 (D.C.1977) (for ineffectiveness claim, § 23–110 motion likely to be more productive than direct appeal because proceeding will not be limited to evidence in trial record); *Angarano v. United States*, 329 A.2d 453, 457–58 (D.C.1974) (en banc) (same). Moreover, appellant waived his right to a direct appeal of his conviction when he pleaded guilty. While appellant could have directly appealed the revocation of his probation in 1984, he was represented at his probation revocation hearing by the same counsel who he now claims was ineffective in connection with his guilty plea. *Cf. Shepard*, 533 A.2d at 1279 (appellant represented on direct appeal by newly appointed counsel). It would be a conflict of interest for a lawyer to appeal a ruling premised on that lawyer's own ineffectiveness. *See Angarano*, 329 A.2d at 457 (conflict of interest for one member of Public Defender Service to argue another member's ineffectiveness on appeal); *Shelton v. United States*, 323 A.2d 717, 718 (D.C.1974) (attorney should not be allowed to argue own ineffectiveness on appeal because of inherent conflict of interest). Accordingly, the defect alleged by appellant was not correctable on direct appeal and appellant is therefore free to pursue his ineffectiveness claim in a § 23–110 motion.

#### B.

▮▮▮ We next address the question whether appellant is entitled to an evidentiary hearing on his claim. D.C.Code § 23–110(c) states:

> Unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the prosecuting authority, grant a prompt hearing thereon, determine the issues, and make findings of

---

**13.** In *Shepard*, we held that if an appellant does not raise a claim of ineffective assistance of trial counsel during the pendency of the direct appeal (preferably by a § 23–110 motion, which can be consolidated with the direct appeal)— when at the time appellant demonstrably knew or should have known of the grounds for alleging counsel's ineffectiveness—appellant will be barred from raising the claim later in a § 23–110 motion, unless appellant can show cause and prejudice. 533 A.2d at 1280–82. *Shepard*, however, applies only prospectively, *id.* at 1282, and thus does not control cases tried before December 2, 1987.

fact and conclusions of law with respect thereto.

"There is a presumption that a trial court presented with a § 23–110 motion should conduct a hearing." *Gaston v. United States*, 535 A.2d 893 (D.C.1988). In *Pettaway* we concluded that, in order to uphold a denial of a § 23–110 motion without a hearing, the reviewing court must be able to state that " 'under no circumstances could the petitioner establish facts warranting relief.' " 390 A.2d at 983–84 (quoting *Fontaine v. United States*, 411 U.S. 213, 215, 93 S.Ct. 1461, 1463, 36 L.Ed.2d 169 (1973)). In giving practical effect to this rule, we have recognized three categories of claims that do not merit hearings: (1) vague and conclusory allegations, (2) palpably incredible claims, and (3) assertions that would not merit relief even if true. *McClurkin v. United States*, 472 A.2d 1348, 1353 (D.C.), *cert. denied*, 469 U.S. 838, 105 S.Ct. 136, 83 L.Ed.2d 76 (1984); *Pettaway*, 390 A.2d at 984. Appellant's claim that counsel failed to investigate properly by failing to ascertain whether Hooker had given a statement to police is neither vague nor conclusory nor palpably incredible. The question, then, is whether we can say with certainty that appellant would not be entitled to relief even if his allegations were true. We are unable to make such a statement here.

The validity of appellant's ineffective assistance of counsel claim must be evaluated by reference to the standards set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As explained by this court in *White v. United States*, 484 A.2d 553 (D.C.1984):

> The *Strickland* test has two components: "First, the defendant must show that counsel's performance was deficient.... The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." The second requirement is that "the deficient performance prejudiced the defense...."

*Id.* at 558 (quoting *Strickland*, 466 U.S. at 687, 688, 104 S.Ct. at 2064, 2065) (citations omitted). We have held that the absence of pretrial investigation may constitute ineffective assistance of counsel. *See Harris v. United States*, 441 A.2d 268, 274 (D.C.1982); *Asbell v. United States*, 436 A.2d 804, 809–10 (D.C.1981). Moreover, the Supreme Court has stated that trial counsel's failure to become informed of the facts bearing on a plea situation might satisfy the standard necessary to vacate a plea on collateral attack. *Tollett v. Henderson*, 411 U.S. 258, 266–67, 93 S.Ct. 1602, 1607–08, 36 L.Ed.2d 235 (1973).

Appellant claims that his counsel erroneously informed him that Hooker had made a statement to the police and would testify against him at trial. It is at least conceivable that such a claim, if supported at a hearing by credible testimony from Hooker, in the absence of effective rebuttal by the government, could form the basis for a conclusion that counsel failed to investigate or interview potential witnesses and that his performance, therefore, was unreasonable under prevailing professional norms. Accordingly, we cannot say that appellant has failed to allege facts which could support a claim that counsel was deficient. Nor, given Hooker's affidavit, can we say that the files and records conclusively show that the facts appellant alleges are false.

We turn, next, to prejudice. To demonstrate prejudice under *Strickland*, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). Here, appellant's pro se motion to vacate states:

> Counsel stated to petitioner that his first cousin had given the police a statement and was coming to court to testify against him at trial.... Petitioner had no intention to plead guilty to a crime which he did not commit.... Counsel stated [Hooker] was going to testify and the jury would believe the word of two before they take the word of one.

These allegations amount to a colorable claim that appellant would not have pleaded guilty but for counsel's errors. While, objectively, Hooker's testimony may not have been crucial to the case against appellant, we cannot summarily dismiss the possibility that, because of counsel's state-

ments, appellant believed the added weight of his own cousin's testimony against him would be critical and appellant, therefore, decided to plead guilty.

Nor can we accept the government's argument that the prosecution's proffer of evidence at the plea hearing necessarily erased any prejudice to appellant from his counsel's alleged misstatements. The government proffer identified Hooker as a government witness and elaborated the facts that the government intended to prove at trial, without identifying the particular facts to which Hooker would testify and without identifying any other witness the government planned to call.[14] Thus, there was nothing in the proffer to disabuse appellant of the notion that Hooker had made a statement to the police and that Hooker's testimony against him would be damaging. Moreover, Hooker's March 1, 1988, sworn affidavit in the record directly contradicts the government's proffer that Hooker would have been a witness for the government. Such an important factual dispute is best resolved by an evidentiary hearing.

In summary, given that appellant has asserted his innocence, has advanced a colorable claim that his trial counsel was deficient,[15] has stated that but for counsel's errors appellant would not have pleaded guilty, and has presented an affidavit from a proffered government witness which raises a material factual issue, we conclude that § 23–110 requires an evidentiary hearing on appellant's claims.

**14.** The complainant was not specifically identified as a government witness during the proffer. The record, in fact, is devoid of any statement of the complainant to the police or to the prosecutor.

**15.** In addition to the ground for ineffectiveness discussed above, appellant argues that counsel was ineffective on at least two other grounds: (1) counsel failed to inform appellant of a medical report revealing there was no indication of assault on complainant; and (2) counsel actually knew that Hooker had not given a statement to the police and failed to inform appellant. It appears unlikely that appellant would be able to sustain an ineffectiveness claim on either ground. There is no indication that appellant

## V.

We are aware of possible prejudice to the government attributable to the fact that appellant's claim has been raised so late in the day—over eight years after his guilty plea. We recognize that "[i]t will not do for a prisoner to wait until government witnesses have become unavailable, as by death, serious illness or absence from the country, or until the memory of available government witnesses has faded" to file a collateral claim. *Desmond v. United States*, 333 F.2d 378, 381 (1st Cir.1964) (discussing prejudice to government caused by delay in filing claim under 28 U.S.C. § 2255).[16]

On the other hand, § 23–110(b) states that "[a] motion for such relief may be made at any time." *See also Heflin v. United States*, 358 U.S. 415, 420, 79 S.Ct. 451, 454, 3 L.Ed.2d 407 (1959) (concurring opinion) (stating that the identical language in § 2255 "simply means that, as in habeas corpus, there is no statute of limitations, no *res judicata*, and that the doctrine of laches is inapplicable"); *McKinney v. United States*, 93 U.S.App.D.C. 222, 224, 208 F.2d 844, 847 (1953) (stating that in § 2255 case "tardiness is irrelevant where a constitutional issue is raised and where the prisoner is still confined").

After evaluating these competing themes, we conclude that lapse of time and prejudice to the government cannot, by themselves, bar a § 23–110 motion seeking to withdraw a guilty plea based on alleged ineffectiveness of counsel. The trial court, however, in conducting an evidentiary hear-

would not have pleaded guilty had he known about the medical report (which, after all, in no way proves there was consent); nor is any evidence proffered to support the claim that appellant's counsel purposefully deceived his client. Nonetheless, because we find it necessary to remand for the reasons discussed above, appellant will be free at the evidentiary hearing to introduce evidence in support of his other ineffectiveness claims.

**16.** D.C.Code § 23–110 is substantially identical to 28 U.S.C. § 2255, and federal court interpretations of that section provide guidance to this court in construing § 23–110. *Butler v. United States*, 388 A.2d 883, 886 n. 5 (D.C.1978).

ing (if required as it is here), may consider the length of delay (in this case appellant's delay in obtaining Hooker's affidavit), any excuses for that delay, and any resulting prejudice to the government as factors bearing on the credibility of appellant's claim. *See Raines v. United States*, 423 F.2d 526, 531 (4th Cir.1970) ("petitioners' silence for extended periods ... serves to render their allegations less believable"); *Farnsworth v. United States*, 98 U.S.App. D.C. 59, 63, 232 F.2d 59, 63 (1956) ("If a defendant without good reason waits a long time before asserting his [or her] claimed right ... he [or she] might have difficulty maintaining his [or her] burden of proof, or a heavier burden of proof might be imposed upon him [or her].");  *Cabrera v. United States*, 347 F.Supp. 936, 941 (D.Mass.1972) ("Lapse of time before initiation of a collateral attack upon a judgment is a fact which the [c]ourt may properly consider in assessing the good faith and credibility of the moving party, as well as the question of proof required to sustain the attack."); *United States v. Bostic*, 206 F.Supp. 855, 856–57 (D.D.C.1962) ("The burden is particularly heavy if the issue is one of fact and a long time has elapsed since the trial of the case.... Long delay may raise a question of good faith."), *aff'd*, 115 U.S.App.D.C. 79, 317 F.2d 143 (1963); *Aiken v. United States*, 191 F.Supp. 43, 50 (M.D.N.C.) ("While motions under 28 U.S.C. § 2255 may be made at any time, the lapse of time affects the good faith and credibility of the moving party."), *aff'd*, 296 F.2d 604 (4th Cir.1961); *United States v. Wiggins*, 184 F.Supp. 673, 676 (D.D.C.1960) ("lapse of time affects the quantum of required proof, as well as the good faith and credibility of the moving party").[17]

The government's argument that we should simply instruct the trial court to determine whether appellant "slept on his rights" before assessing the merits of appellant's claim is not supported by relevant caselaw. Although federal caselaw inter-

preting 28 U.S.C. § 2255 is useful in the absence of applicable precedent under D.C. Code § 23–110, see *supra* note 16, it is crucial to note that, since 1977, § 2255 has been governed by a set of legislatively enacted rules for which there is no analogue in the District of Columbia. In particular, Rule 9(a) states:

Delayed motions. A motion for relief made pursuant to these rules may be dismissed if it appears that the government has been prejudiced in its ability to respond to the motion by delay in its filing unless the movant shows that it is based on grounds of which he [or she] could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the government occurred.

Rules Governing § 2255 Proceedings 9(a) (1982). The Rule 9 cases have generally concluded that a § 2255 motion should be denied on the ground of delay if the delay was inexcusable and the government was prejudiced by the delay. *See, e.g., Rizzo v. United States*, 821 F.2d 1271, 1272–73 (7th Cir.1987). Because there is no local rule analogous to Rule 9, however, we may rely only on pre-Rule 9 federal caselaw discussions of staleness. Interestingly, this caselaw does not foreshadow Rule 9, a state of affairs that, presumably, led to the rule's enactment. Accordingly, we are left with caselaw, cited above, that uses delay in filing a collateral attack to affect the credibility of the claim but not to bar its consideration altogether. *See also Bartlett v. United States*, 574 F.2d 1268 (5th Cir.1978) (holding that, absent Rule 9, thirty-five-year delay due solely to lack of education and knowledge of the law was not basis for dismissing § 2255 motion without an evidentiary hearing); *Powers v. United States*, 446 F.2d 22 (5th Cir.1971) (holding that where petitioner's allegations, if proved, would entitle him to relief, he should be granted an evidentiary hearing,

---

**17.** The cases speak of delay affecting the "quantum of proof" and the "burden of proof" as well as the "good faith and credibility" of the moving party. This language simply means that a defendant who has delayed a collateral attack may need to produce more evidence to convince a court that the defendant has met his or her burden than would otherwise be the case, but not that the defendant's formal burden of proof actually increases. We believe this idea is best expressed by saying that delay can affect the "credibility of appellant's claim."

notwithstanding nearly twenty-year delay in filing § 2255 motion).[18] Nor do we deem it appropriate to adopt judicially for § 23–110 the limiting standard enacted legislatively for § 2255 in Rule 9.

*Reversed and remanded.*

---

**18.** While recent federal caselaw under Rule 9 supports the government's suggested bifurcated approach—assessing the issues of delay and prejudice before reaching the merits of the claim, *see, e.g., United States v. Gutierrez,* 839 F.2d 648, 651–52 (10th Cir.1988)—the only pre-Rule 9 case arguably supporting such an approach is *United States v. Moore,* 166 F.2d 102, 105 (7th Cir.), *cert. denied,* 334 U.S. 849, 68 S.Ct. 1500, 92 L.Ed. 1772 (1948). In *Moore,* the court found that petitioner—who in 1946 filed a motion to vacate a judgment rendered against him in 1928—had "too long slept upon his rights." *Id.* The *Moore* court stated that while there was no applicable statute of limitations that would bar petitioner's motion, "an applicant must show reasonable diligence in presenting his claim." *Id. Moore,* however, is not apposite because it is a pre–§ 2255 case in which the petitioner had already served his full sentence, did not assert innocence or prejudice, and was seeking a writ of error *coram nobis.* The United States Court of Appeals for the Tenth Circuit rejected the application of *Moore's* "diligence" requirement to § 2255, stating that such a requirement was "in reality a time limitation." *Haier v. United States,* 334 F.2d 441, 442 (10th Cir.1964). *Cf. Farnsworth v. United States,* 98 U.S. App.D.C. 59, 62–63, 232 F.2d 59, 62–63 (1956) (rejecting *Moore* requirement that defendants seeking writ of error *coram nobis* must show cause for delay); *but cf. United States v. Darnell,* 716 F.2d 479, 480 (7th Cir.1983), *cert. denied,* 465 U.S. 1083, 104 S.Ct. 1454, 79 L.Ed.2d 771 (1984) (holding that diligence requirement applied to both *coram nobis* relief and motions to withdraw guilty plea under Fed.R.Crim.P. 32(d)).