**Cleveland WRIGHT, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 91–CO–136.**

District of Columbia Court of Appeals.

Argued Dec. 12, 1991.
Decided May 15, 1992.

Mark J. Rochon, with whom W. Gary Kohlman, Washington, D.C., was on the brief, for appellant.

Robert A. de la Cruz, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher and Roy W. McLeese III, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before FERREN and STEADMAN, Associate Judges, and PRYOR, Senior Judge.

STEADMAN, Associate Judge:

Appellant Cleveland Wright is presently serving extensive concurrent sentences imposed after his conviction, affirmed on appeal, of three charges stemming from a murder in 1978. In this collateral proceed-

ing under D.C.Code § 23–110 (1989), appellant seeks a hearing, denied by the trial court, on his motion alleging that his trial counsel was ineffective. We conclude that appellant was entitled to a hearing on the issue of trial counsel's failure to file any motion to suppress the evidence seized during a search of appellant's bedroom dresser, conducted without a warrant but with the putative consent of appellant's father.

## I.

The appellant was convicted in 1979 on counts of premeditated first-degree murder while armed, felony first-degree murder while armed, and armed robbery in connection with the murder of William Horn by a .32 caliber bullet.[1] At trial, the government's chief witness, Ronald Willis, testified that appellant had confessed to him that he had killed Horn because he "needed some money."[2] Aside from this confession, the government's evidence consisted largely of testimony that appellant had subsequently participated with Santae Tribble in the sale of a revolver[3] of the same caliber and type as the one used to commit the murder and of evidence seized during a search of appellant's bedroom and adjoining crawl space. During this search, which the police conducted after obtaining the consent of appellant's father,[4] the police recovered from appellant's bedroom dresser four live .32 caliber rounds, one spent .32 caliber round, and a photograph of ap-

---

1. In her order denying appellant's motion to vacate his convictions and sentences, the trial judge *sua sponte* ordered counsel to file memoranda addressing issues of multiple punishment or double jeopardy arising from appellant's concurrent sentences. On motion of the government, the trial judge vacated appellant's armed robbery conviction on December 21, 1990. In its brief on appeal, the government now suggests that appellant is entitled to a resentencing to eliminate one of the murder convictions in light of this court's decisions in *Byrd v. United States,* 510 A.2d 1035 (D.C.1986) (en banc) and *Perry v. United States,* 571 A.2d 1156, 1157 n. 1 (D.C.1990), with a concomitant reinstatement of the armed robbery conviction. Appellant, however, has not raised this issue. We think it more properly raised in a fresh motion in the trial court rather than *de novo* in an appeal from a § 23–110 motion dealing with a distinct collateral issue.

2. Willis also testified that appellant told him that he had served as "back-up man" to his friend, Santae Tribble, in Tribble's murder of John McCormick several weeks after Horn's death. Appellant and Santae Tribble were jointly indicted for the two murders, but their trials subsequently were severed, with appellant being convicted of the Horn murder and acquitted of the McCormick murder, while Tribble was convicted of the McCormick murder and acquitted of the Horn murder.

3. The sold revolver itself was later stolen from the buyer and hence was not introduced into evidence.

4. Although only the father executed a written consent form, the police apparently discussed their desire to search appellant's room with both of appellant's parents.

pellant showing him holding two guns, including a .32 caliber seven-shot revolver in his left hand that was identical in appearance to the gun that was sold.[5]

Appellant, still represented by trial counsel, appealed his conviction to this court, alleging insufficiency of the evidence to convict and asserting several erroneous evidentiary rulings. We affirmed appellant's convictions in an unpublished opinion. *Wright v. United States*, No. 80–97 (D.C. May 18, 1981). Appellant subsequently filed *pro se* a motion to vacate his convictions and sentences pursuant to D.C.Code § 23–110 (1989). The motion later was supplemented by newly-retained counsel. As supplemented, the motion claimed that appellant's trial counsel was ineffective because he (1) failed to file a motion to suppress the ammunition, photograph and other evidence seized by the police during their warrantless search of appellant's room; (2) failed to file a motion to sever the counts involving the two victims;[6] and (3) failed to prepare the appellant's parents as witnesses. The trial court denied appellant's § 23–110 motion without a hearing. This appeal followed.

## II.

### A.

Appellant's principal focus on appeal is on his claim of ineffective assistance of trial counsel in failing to move for the suppression of the evidence found in his bedroom dresser. We consider the validity of a claim of ineffective assistance of counsel by reference to the familiar standards of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, appellant must establish that counsel's performance was deficient under prevailing professional norms. *Id.* at 687–88, 104 S.Ct. at 2064–65. Second, appellant must establish "prejudice," *viz.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. This latter burden is particularly demanding when the claim is, as here, based on counsel's failure to file a suppression motion. In such circumstances, the movant must be prepared to introduce "whatever evidence will be necessary to succeed with suppression." *Hockman v. United States*, 517 A.2d 44, 50 n. 9 (D.C.1986); *Asbell v. United States*, 436 A.2d 804, 815 (D.C.1981); *see also Taylor v. United States*, 603 A.2d 451, 459 (1992).[7]

As we recently recapitulated in *(James) Smith v. United States*, No. 85–995 (D.C. May 1, 1992), in collateral ineffectiveness claims, there is a presumption that the trial judge should conduct a hearing, *see Ramsey v. United States*, 569 A.2d 142

---

5. The police also recovered a woman's stocking in the dresser; however, this item was relevant only to the charges against appellant for the murder of John McCormick. In searching the crawl space adjacent to appellant's bedroom, the police recovered two boxes of .22 caliber ammunition. Appellant acknowledged at oral argument that the seizure of this evidence from the crawl space, even if improper, was irrelevant; he focuses only on the items found in the dresser.

6. See note 2 *supra.*

7. Thus, while in a pretrial suppression hearing, the burden is placed on the government, the situation is reversed on collateral attack.

If a proper motion would have led to suppression, attention would turn to the application of the second prong of *Strickland.* Here, the witness to the confession was impeached with bias and the other evidence was circumstantial. The suppressed evidence arguably played an important corroborative role. Appellant was acquitted on the second murder charges on which he was tried. Thus, we cannot rest at this point on the ground that evidence of appellant's guilt was so strong that there could not be a reasonable probability that the suppression of the challenged evidence could have left the jury with a reasonable doubt as to appellant's guilt. Although the trial court indicated a contrary view, this was not a major assertion on appeal, and we think a final determination should await the outcome of the full hearing before the trial court. *Cf. Rice v. United States*, 580 A.2d 119, 123 (D.C.1990).

The government does not here argue that the normal outcome-determinative test of *Strickland* should not apply to ineffectiveness claims based on Fourth Amendment violations. *See Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (majority and concurring opinions); *Hockman, supra*, 517 A.2d at 51–52.

(D.C.1990); *Gaston v. United States*, 535 A.2d 893 (D.C.1988), "[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." D.C.Code § 23–110(c) (1989). *See also Ellerbe v. United States*, 545 A.2d 1197 (D.C.), *cert. denied*, 488 U.S. 868, 109 S.Ct. 174, 102 L.Ed.2d 144 (1988). To uphold the denial of a § 23–110 motion without a hearing, this court must conclude that under no circumstances could the movant establish facts warranting relief. In giving effect to the rule, the court has recognized that a hearing is not required if there are (1) vague and conclusory allegations; (2) palpably incredible claims; and (3) assertions that would not merit relief even if true. *Ramsey, supra*, 569 A.2d at 147 (citing *McClurkin v. United States*, 472 A.2d 1348, 1353 (D.C.), *cert. denied*, 469 U.S. 838, 105 S.Ct. 136, 83 L.Ed.2d 76 (1984); *Pettaway v. United States*, 390 A.2d 981, 984 (1978)).

### B.

■ Applying these standards, we are unable to affirm the trial court's denial of a hearing on the suppression issue on the relied-on grounds that appellant's claims were "palpably incredible" and "would not merit relief even if true."[8] Appellant's claim rests on his contention that appellant's father lacked authority to consent to the police search of appellant's bedroom and adjacent crawl space. In support of this claim, appellant asserted in an affidavit that he occupied two rooms on the second floor of his parents' house, that he paid rent for the rooms,[9] and that the rooms were set aside for his "sole and exclusive

usage." This would not inherently seem a remarkable or unbelievable arrangement with an adult son; appellant was twenty years old at the time.[10]

■ The touchstone for analyzing whether a warrantless search violates the Fourth Amendment where a third party consents to the search is whether the third party "possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 992, 39 L.Ed.2d 242 (1974). *See also id.* at 171 n. 7, 94 S.Ct. at 993 n. 7; *Derrington v. United States*, 488 A.2d 1314 (D.C.1985), *cert. denied*, 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 201 (1988); *Welch v. United States*, 466 A.2d 829 (D.C.1983); 3 WAYNE R. LAFAVE, SEARCH AND SEIZURE, §§ 8.3, 8.4(b) (2d ed. 1987). Courts generally have been hesitant to conclude that a parent lacked authority to consent to a search of a child's bedroom even when the child has reached adulthood; however, "it is to be doubted that it is consistent with the *Matlock* rationale to say that an emancipated person may *never* have a protected individual privacy interest so long as he continues to reside in the family home." 3 LAFAVE, *supra*, § 8.4(b), at 285. *See also id.* at 285 n. 65 (citing cases).

A recent case in our own federal court system is an example of explicit recognition of limits upon a parent's right to consent where an adult child is involved. In *United States v. Whitfield*, 747 F.Supp. 807 (D.D.C.1990), *rev'd and remanded*, 291 U.S.App. D.C. 243, 939 F.2d 1071 (1991), a

---

**8.** Neither the government nor the trial court considered the claims "vague and conclusory," nor is any assertion made that consideration was barred by the failure to prove "cause and prejudice" for the failure to raise the argument on direct appeal. *Head v. United States*, 489 A.2d 450 (D.C.1985). Accordingly, we do not reach these issues.

**9.** In his *pro se* motion, appellant asserted that he paid the equivalent of $25 per week in rent for the rooms.

**10.** The District of Columbia Council lowered the age of majority to eighteen in 1976, prior to the

events at issue here. District of Columbia Age of Majority Act, D.C.Code § 30–401 (1988).

Although there was trial testimony to the effect that appellant's parents had entered appellant's rooms on occasion, this testimony appears to have related principally to times prior to the search, was given for purposes unrelated to any issue of consent to search and hence not subjected to particular scrutiny or elaboration in that context, and is not necessarily inconsistent with appellant's claim. Likewise, the fact that appellant was unemployed and without a source of income and had a scant employment history when presented in court is not conclusive of a total inability to pay or agree to pay rent.

29–year–old son had his own room in the house of his mother, to whom he paid rent when possible and "had something in the nature of a landlord-tenant relationship." 747 F.Supp. at 809. The degree of access that the mother had to the room was unclear. The trial court concluded, after an extensive review of the cases which it would be repetitive to duplicate here, that the government had failed to establish "that any access retained by defendant's mother/landlady or any privacy interest waived extended to the pockets of defendant's jackets in his closet." *Id.* at 812. However, it refused to suppress, finding that "[i]t was not unreasonable for the agent to believe, in the circumstances, that she had that authority, even though analysis yields a contrary conclusion." *Id.* (citing *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) (search based on third-party consent valid if officer reasonably believes third party has such authority, even if facts developed later show the contrary)). The appellate court agreed with the trial court's analysis as to lack of authority but reversed on the ground that the agent had made insufficient inquiry to justify reliance on the grant of authority. 291 U.S.App. D.C. at 247, 939 F.2d at 1075.

A similar recognition that a parent's authority to consent is not without limits may be seen in our own decision in *Derrington v. United States*, 488 A.2d 1314 (D.C.1985). The search in that case was of a gym bag in the appellant's bedroom. Citing the *Matlock* rule, we upheld a trial court finding that on the totality of the circumstances, the mother, as the lessee and person who exercised control over the entire apartment, had authority to consent to the search of the bedroom. In doing so, we took care to note that with respect to the gym bag, the appellant "did nothing to assert an exclusive right of control over the bag; it was unzipped and in an open area of the apartment to which all members of the household had access." *Id.* at 1325.

■ Of course, neither of these cases had been decided at the time of appellant's trial, and the measurement of trial counsel's effectiveness can fairly be judged only in the context of the time of trial.[11] But the general principles are of long-standing vintage. The first edition of the classic work on the subject, published in 1978, devotes six pages of discussion to the exact subject of a parent's right to consent, particularly with respect to the child's room, and includes the same language quoted above as to the limits of the *Matlock* rationale. 2 Wayne R. LaFave, Search and Seizure § 8.4(b), at 731–36 (1st ed. 1978). Among the then-extant cases was *Reeves v. Warden, Maryland Penitentiary*, 346 F.2d 915, 924 (4th Cir.1965), where the court found invalid a mother's consent to the search of a son's dresser where the room "was set aside exclusively for his use, even though she [the mother] washed his clothes and placed them in one of the drawers."

In this preliminary posture, we do not have occasion to explore further the precise content or application of the consent principle in the parent-child context.[12] "Such

---

11. Apart from the legal question, it may be that some tactical considerations might have played a part in the trial attorney's decision. Further, although it is not apparent what those tactical considerations might be, the efficient allocation of attorney time and efforts is also a factor to consider. Certainly trial counsel is "not required to file frivolous or baseless motions." *Fernandez v. United States*, 375 A.2d 484, 487 (D.C.1977).

12. Thus, we may not necessarily agree with every aspect of the holdings of the cited decisions.

The issue will also arise as to whether, even if appellant's father lacked actual authority to consent to the search of appellant's dresser, the police reasonably believed that the father had the authority to consent. *See Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); *United States v. Peterson*, 524 F.2d 167 (4th Cir.1975), *certs. denied*, 423 U.S. 1088, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976), 424 U.S. 925, 96 S.Ct. 1136, 47 L.Ed.2d 334 (1976). The trial court expressed a conclusory view that the police officers reasonably could believe that the father had authority to consent, but absent any specific evidentiary focus on this subject, we do not think it alone should form the basis for the denial of a hearing. The government does not press the point in its brief to us.

determinations should be approached only with great circumspection and made only upon a clearly defined record." *United States v. Peterson, supra* note 12, 524 F.2d at 179.[13] At this point, we simply conclude that under all the circumstances, we are compelled to set aside the denial of a hear-

ing on this ineffectiveness claim, and remand for further proceedings.[14]

*So ordered.*

**13.** We also noted many years ago that a claim of lack of authority to consent "requires our close examination of the underlying facts of the consent." *Villine v. United States,* 297 A.2d 785, 786 (D.C.1972). As noted above, however, in a collateral proceeding, the burden of showing a right to suppression is upon the defendant.

**14.** In light of the necessity of a hearing on the suppression issue, we do not reach appellant's two other claims of trial counsel's ineffective-

ness. In analyzing claims of ineffective assistance under *Strickland,* courts are to consider all of the surrounding circumstances as they relate to both prongs of the *Strickland* test. *Strickland, supra,* 466 U.S. at 689–90, 695, 104 S.Ct. at 2065–66, 2068. Thus, the trial court on remand may consider the case in its totality in determining whether the appellant has met the *Strickland* standard.