*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16-CO-295

09/28/2017

FILED
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

VENLONTE V. BETHEA, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(FEL-7201-98)

(Hon. Craig Iscoe, Trial Judge)

(Submitted June 20, 2017                    Decided September 28, 2017)

*Richard S. Stolker* was on the brief for appellant.

*Channing D. Phillips*, United States Attorney at the time the brief was filed, *Elizabeth Trosman*, *Chrisellen R. Kolb*, and *Michael E. McGovern*, Assistant United States Attorneys, were on the brief for appellee.

Before GLICKMAN, THOMPSON, and EASTERLY, *Associate Judges*.

Opinion for the court by *Associate Judge* EASTERLY.

Dissenting opinion by *Associate Judge* THOMPSON, at page 8.

EASTERLY, *Associate Judge*:  Appellant Venlonte V. Bethea appeals the

Superior Court's order denying his motion under D.C. Code § 23-110 (2001)—

alleging that he received ineffective assistance of counsel (IAC) at trial—without a hearing. Because we conclude that our well established presumption in favor of holding a hearing on all § 23-110 motions has not been rebutted, we reverse and remand for a hearing on his IAC claim.

## I.

Mr. Bethea was convicted by a jury of conspiracy to commit murder; four counts of assault with intent to kill while armed; second-degree murder while armed; possession of a firearm during a crime of violence; carrying a pistol without a license; and carrying a dangerous weapon. *Bethea v. United States*, No. 04-CF-120, Mem. Op. & J. at 1 (D.C. Aug. 9, 2010). On direct appeal, this court affirmed all of his convictions. *Id.* Mr. Bethea also sought to collaterally challenge his convictions by filing a § 23-110 motion in which he alleged that he possessed newly-discovered, exculpatory evidence and that his trial counsel had provided him with ineffective assistance.[1] But, because this motion was filed prior to Mr.

---

[1] It is unclear if Mr. Bethea filed this motion *pro se* or through counsel appointed to him after he was found guilty but before he was sentenced ("post-trial counsel"). This initial motion is not in our record on appeal, but the trial court—in denying the motion currently before us—indicated that it was filed *pro se*, whereas other filings in our record indicate that it was filed by post-trial counsel.

Bethea's sentencing in 2004, the trial court ruled it was not yet ripe and dismissed it.[2] Post-trial counsel did not re-file the § 23-110 motion after sentencing. Mr. Bethea was appointed appellate counsel in 2004; appellate counsel moved in 2009 (but still during the pendency of Mr. Bethea's appeal) to "adopt" the previously dismissed § 23-110 motion and to "issue stay [sic] pending further investigation and the possible filing of a supplement to the ineffective assistance motion."[3] Appellate counsel never filed a supplement, never moved to lift the stay, and never obtained a ruling on this motion. In 2015, post-trial counsel, whom the trial court reinstated for reasons not reflected in the record, filed the § 23-110 motion that is the subject of this appeal, apparently reiterating the same claims as were raised in the previously filed motions.[4]

The trial court denied Mr. Bethea's § 23-110 motion without a hearing. While acknowledging that there is a presumption in favor of holding a hearing on

---

[2] *See Junior v. United States*, 634 A.2d 411, 417 (D.C. 1993) ("[A] motion . . . filed before appellant was sentenced [cannot be] characterize[ed] . . . as [a] post-sentence § 23-110 [motion].").

[3] In that motion, appellate counsel represented that post-trial counsel had "indicated that he had lost Mr. Bethea's file."

[4] We do not infer from this sequence of events that Mr. Bethea or his counsel perceived it necessary to supplement the information presented in his first two motions in order to support and obtain a hearing on his claim of ineffective assistance. *Cf. infra* p. 13–14. Nor can we infer that they were, or with further investigation would have been, unable to supplement the information provided.

all § 23-110 motions, *see Ramsey v. United States*, 569 A.2d 142, 147 (D.C. 1990), the trial court determined that Mr. Bethea's motion fell within the narrow exception that allows a trial court to rule on a motion summarily if it finds "that under no circumstances could the petitioner establish facts warranting relief." *Pettaway v. United States*, 390 A.2d 981, 983–94 (D.C. 1978). As the trial court noted, this exception encompasses three categories of claims: those that "(1) are palpably incredible; (2) are vague and conclusory; or (3) even if true, do not entitle the movant to relief." *White v. United States*, 146 A.3d 101, 109 (D.C. 2016) (quoting *Hardy v. United States*, 988 A.2d 950, 961 (D.C. 2010)). The trial court placed this case into the third category, determining that "defendant's claim would warrant no relief even if it were true."[5]

We review a trial court's decision to deny a § 23-110 petition without hearing for abuse of discretion. *Lane v. United States*, 737 A.2d 541, 548 (D.C. 1999); *see also Bellinger v. United States*, 127 A.3d 505, 514–15 (D.C. 2015)

---

[5] The trial court characterized the affidavit attached to the motion as vague and discussed all of the details that it was missing. We do not understand the trial court to have been explaining, in the alternative, that it was denying Mr. Bethea's motion on the grounds that it was "vague and conclusory," nor would such a ruling be supported by the record. Mr. Bethea's § 23-110 motion clearly states the basis of his claim—ineffective assistance of counsel—and the manner in which he believes trial counsel provided that ineffective assistance. It is neither vague, nor conclusory.

("While the decision whether to hold an evidentiary hearing on a § 23-110 collateral challenge to the constitutionality of a conviction is committed to the trial court's discretion, the extent of that discretion is quite narrow." (internal quotation marks omitted)). Although the trial court identified a legitimate ground for denying a § 23-110 petitioner a hearing—namely, that appellant's claim would warrant no relief even if it were true—we conclude that the trial court here abused its discretion by denying the petition summarily.

The trial court began its analysis by assessing the likely prejudice that Mr. Bethea suffered from his trial counsel's failure to call David Norwood, a witness who—according to the § 23-110 motion and the affidavit of Mr. Norwood (attached to the § 23-110 motion)—would have significantly impeached Wendy Barksdale, a key government witness at trial.[6] Ms. Barksdale claimed to have seen the shooting from the window of Mr. Norwood's apartment, and she testified that, from this vantage point, she had "no doubt" that she had seen "[Mr.] Bethea fire a gun into the driver's side window of a car." *Bethea*, No. 04-CF-120, Mem. Op. & J. at 2. Mr. Norwood stated in his affidavit, however, that Ms. Barksdale could not

---

[6] Ms. Barksdale testified reluctantly. In fact, the government indicated that she was a "heavy crack user and a dealer of crack cocaine . . . [who] only testified after being arrested on a material witness warrant." *Bethea*, No. 04-CF-120, Mem. Op. & J. at 2 n.3.

have been watching from the window of his home. Mr. Norwood elaborated that, on the day of the murder, he "left home at approximately 7:00 AM and return[ed] to [his] home at 7:00 PM" and "[t]here is no way physically possible for Ms. Wendy Barksdale or [him] to have been in [his] residence during the hours specified."[7]

The court assumed, without explanation, that Mr. Norwood's testimony would have been as "vague" and "devoid of practically any detail[]" as his affidavit. Preliminarily, we view Mr. Norwood's affidavit differently. Although it does not say it explicitly, this affidavit clearly implies that Ms. Barksdale was not at his home when he left in the morning nor when he returned in the evening, that he locked the door to his residence, that Ms. Barksdale did not have a key, and that he had no reason to believe Ms. Barksdale had any other means of accessing his home. This much can be readily inferred from Mr. Norwood's clear statement that

_____

[7] The record before us is not clear regarding the exact time at which the murder occurred. The government indicates that the shooting happened "[s]ometime after 6:00 pm," on September 21, 1998. But it has not argued that Mr. Norwood's affidavit does not cover the time-frame at which the murder occurred, and the trial court's ruling makes no mention of the timing. Therefore, in this opinion, we assume that the time of the shooting was within the timeframe described by Mr. Norwood's affidavit—i.e. between 6:00 PM and 7:00 PM. We additionally note that in a letter also attached to the motion, Mr. Norton asserts that Wendy Barksdale was not in his home at "any time" on September 21, 1998.

"[t]here is no way physically possible for Ms. Wendy Barksdale . . . to have been at [his] residence . . . ." Moreover, in making the assumption that Mr. Norwood's testimony would have mirrored his affidavit, the trial court failed to recognize that, at a hearing, Mr. Norwood would be questioned by counsel for both Mr. Bethea and the government, and his assertions in his affidavit could be expanded upon—and, further, that he might not be the only witness called to testify. (It seems likely that Mr. Bethea and/or his trial counsel, would also have testified at a § 23-110 hearing, as Mr. Bethea's IAC claims make relevant both his communications with his trial counsel and any investigation by counsel related to Mr. Norwood.) By making assumptions about what testimony would be elicited and then assessing Mr. Bethea's underlying *Strickland* claim in light of those assumptions, the trial court conflated the procedural question of whether there is a reason to deny petitioner a hearing on his motion with the distinct merits question of whether the petitioner's claims warrant relief (once all evidentiary questions have been resolved, typically through a hearing).

Separating the procedural question from the merits question, we conclude that the presumption in favor of granting Mr. Bethea a hearing was not rebutted. Mr. Norwood's affidavit alleged specific facts that indicate that counsel provided ineffective assistance by failing to call a witness who could have testified that the

government's sole eyewitness to the murder could not have seen what she said she saw. Accordingly, it cannot be said that "under no circumstances could [Mr. Bethea] establish facts warranting relief." *Ramsey*, 569 A.2d at 147.

Because we conclude that the presumption in favor of holding a hearing on claims brought under § 23-110 has not been rebutted, we reverse and remand for further proceedings consistent with this opinion.

*So ordered.*

THOMPSON, *Associate Judge*, dissenting: As the majority opinion acknowledges, this court reviews a trial court's decision to deny a D.C. Code § 23-110 motion without a hearing for abuse of discretion. I am unable to join my colleagues in reversing the judgment denying appellant's motion without a hearing because I cannot conclude in good conscience that, on the record that was before him, Judge Iscoe erroneously exercised his discretion in determining that no hearing was warranted.

To briefly recap the facts, in February 2002, a jury convicted appellant of conspiracy to commit murder, second-degree murder while armed, multiple counts

of assault with intent to kill while armed, and other offenses, all based on an incident that occurred "[s]ometime after 6:00 p.m." on September 21, 1998 (the "incident"). On January 8, 2004, before he had been sentenced, appellant filed a motion for a new trial based in part on a claim of ineffective assistance of counsel. The Superior Court judge who had presided over appellant's trial denied the motion as not yet ripe. Appellant was subsequently sentenced and filed a direct appeal, and this court affirmed his convictions. In July 2009, during the pendency of appellant's direct appeal, Judge Iscoe, to whom the case had been transferred, granted leave for appellant to adopt his January 8, 2004, motion and, at appellant's request, stayed consideration of that motion "pending further investigation and the possible filing of a supplement." Over six years later, in August 2015, appellant filed a second (almost identical) motion pursuant to D.C. Code § 23-110 for a new trial based on ineffective assistance of counsel and newly discovered evidence, attaching the same 2002 affidavit of David Norwood and unsworn statement (purportedly from Norwood) he had attached to his 2004 motion.

In his August 2015 motion, appellant asserted that he had "specifically asked [his] trial counsel" to call Norwood as a witness at trial. Appellant argued that had Norwood been called as a witness, appellant "would have been acquitted." Appellant further asserted that, at trial, "the government relied primarily on an

eyewitness by the name of Ms[.] Barksdale" who testified that "she observed [appellant] shooting at a vehicle occupied by the decedent and the complainants" and that she "indicated that she was viewing these events from the window of a home occupied by . . . Norwood."

In his affidavit dated May 13, 2002, that accompanied appellant's motions, Norwood averred the following:

> On 21 September 1998, I, David Norwood, went to work for Stephen Gill, on Livingston Road in Oxon[] Hill, Maryland. I left home at approximately 7:00 AM and returned to my home at 7:00 PM.
>
> There is no way physically possible for Ms. Wendy Barksdale or I to have been at my residence during the hours specified above on 21 September 1998.

The undated, unsworn letter, purportedly from Norwood that accompanied appellant's motions, states:

> Beginning on 20 September 1998 through the 21st September 1998. The women known as Wendy Barksdale and Sherry (last name unknown) were not at my home of 721 Malcolm X Ave SE, for any time during those two days.

Appellant contended in his motion that testimony by Norwood at trial "would have undermined the credibility of Ms[.] Barksdale to such an extent that the outcome of the trial would have been different." Appellant further stated in his motion that he notified his trial counsel that Norwood "was a pivotal witness in the

case" and that Norwood "could testify that at the time of the shooting, . . . Norwood was not at his residence, that the door to his residence was locked, that Ms[.] Barksdale did not have a key to his residence and that Ms[.] Barksdale could not have been present at his residence on the day and at the time of the shooting." Appellant argued that "trial counsel, having been made aware of . . . Norwood as a material witness in th[e] case, [and having] contacted . . . Norwood and confirmed the substance of his potential testimony prior to trial," but having failed to call Norwood to testify, was constitutionally ineffective under the standard established in *Strickland v. Washington*, 466 U.S. 668 (1984).

In a March 28, 2016, Order, Judge Iscoe denied appellant's motion without a hearing. Judge Iscoe acknowledged the presumption in favor of holding a hearing on a § 23-110 motion. *See Ramsey v. United States*, 569 A.2d 142, 147 (D.C. 1990). He found, however, that Norwood's affidavit is "vague and factually unsupported," "offers no explanation for how [Norwood] knows that it was impossible for Ms. Barksdale to have been at his house" during the shooting, was not based on "first-hand knowledge of whether anyone was actually in his house" at the time of the shooting (given that the affidavit states that Norwood "was working in Maryland at the time") and is "devoid of practically any details which

would support his bald assertion that Ms. Barksdale could not possibly have been at his house," especially in light of Barksdale's "compelling and detailed" trial testimony. Judge Iscoe noted that neither the affidavit nor the unsworn letter "makes any mention of whether [Norwood] locked his house . . ., whether there was or was not anyone inside when he left, . . . whether Ms. Barksdale did or did not have a key to his house," or "whether anyone else . . . had a key to his house." Judge Iscoe therefore concluded that no hearing was necessary because even if appellant's claims (presumably, appellant's claims about the information provided to his counsel and the first-hand information in Norwood's affidavit and purported statement) were true, they would warrant no relief.

Appellant now asserts that Judge Iscoe abused his discretion in denying his motion without a hearing. In particular, he argues that the trial court "incorrectly determined that the Norwood affidavit was conclusory" for failing to state the basis of Norwood's claim that it was impossible for Barksdale to have been at his house at the time in question. I do not agree.

This court will affirm the trial court's denial of a § 23-110 motion without a hearing if the claims "'(1) are palpably incredible; (2) are vague and conclusory; or (3) even if true, do not entitle the movant to relief.'" *Bellinger v. United States*,

127 A.3d 505, 515 (D.C. 2015) (quoting *Newman v. United States*, 705 A.2d 246, 261 (D.C. 1997)). "In deciding whether to hold a hearing, the trial court has every right to expect the motion papers to present not only the evidence on which the movant relies but also his or her explanations of obvious impediments to the credibility of that evidence." *Jones v. United States*, 918 A.2d 389, 408 (D.C. 2007).

While we have sometimes accepted "further possible explanations in [an appellant's] brief to us" in lieu of "explanations [provided] to the trial court in affidavits," *id.* at 404, I cannot conclude in this case that it was unreasonable for Judge Iscoe to conclude that the evidentiary support for appellant's motion was too vague to warrant a hearing. As noted above, in 2009, six years before appellant filed his 2015 motion, Judge Iscoe stayed consideration of appellant's claim of ineffective assistance of trial counsel. He agreed to a stay at the request of appellant's counsel, who asked that the court do so "pending further investigation and the possible filing of a supplement to the ineffective assistance motion." As far as I can tell from the record, appellant thereafter failed to supplement his filing with *any* further evidence supporting Norwood's allegations, even though he clearly recognized (as reflected in his motion) that he needed to have Norwood provide the factual context that was the basis for his claim to know that Barksdale

was not in his house at the time of the shooting (e.g., that he inspected all rooms, or, at least, all sleeping rooms, of the house and locked the house before he went to work, that Barksdale did not have a key, that no one else had a key that might have been used to admit Barksdale,[1] etc.).[2]

Judge Iscoe recognized that appellant claimed in his motion that Norwood could have supplied the missing detail at trial, but, especially after the years that passed and the lengthy stay that ensued at appellant's request after he first submitted the Norwood affidavit and statement, Judge Iscoe had "every right to expect" that appellant would come forward with evidence that, if credited, could overcome "obvious impediments to the credibility of" Norwood's initial vague and conclusory statements. *Jones*, 918 A.2d at 408. Moreover, by the time Judge Iscoe was asked to rule on appellant's motion in 2015, the only supporting affidavit, which was executed in 2002, was thirteen years old, a fact that raises additional questions about whether the affiant would be able to remember details

---

[1] The trial record, which established that Norwood's mother's house was on the same block as Norwood's house, would seem to make it especially inappropriate to assume that no one else had a key to Norwood's house.

[2] The lack of detail from Norwood is especially striking given other seemingly irrelevant details his affidavit did provide: e.g., that he went to work "for Stephen Gill" on "Livingston Road" in "Oxon[] Hill."

and would actually be willing (and available) to testify at a hearing.[3]  On this record, I cannot fault Judge Iscoe for concluding that the affidavit on which appellant's motion relied was insufficient to warrant a hearing on the motion.  *Cf. Metts v. United States*, 877 A.2d 113, 122 (D.C. 2005) ("The trial judge, recognizing that an additional credible proffer from one or more of these prospective witnesses *might* warrant a § 23-110 hearing, granted Mr. Metts a generous amount of time in which to present such evidence [e.g., clarification by one witness about whether she was in a position to see what the defendant was doing, and something other than inadmissible hearsay from another witness].  Inasmuch as Mr. Metts failed to [offer a more credible statement from the witness], he also failed to establish a reasonable probability that a § 23-110 hearing would result in a finding that his trial counsel was deficient.  Accordingly, the trial judge did not abuse her discretion in refusing to conduct a § 23-110 hearing based on the statements of these prospective witnesses." (internal citation omitted)).

---

[3]  *Cf. Lanton v. United States*, 779 A.2d 895, 903 (D.C. 2001) (reversing order denying § 23-110 motion without a hearing where, although proffered testimony of neighbors was not set out in conventional sworn affivadits, there was "no reason to doubt their willingness to testify").  Indeed, Judge Iscoe might have reasonably inferred that appellant did not supplement his motion because he *could not* supplement it.

Our case law establishes that a hearing on a § 23-110 motion is not required if the "specifications of the motion . . . [are] couched in conclusory terms with essentially no factual foundation." *Gibson v. United States*, 388 A.2d 1214, 1217 (D.C. 1978). Judge Iscoe reasonably recognized that Norwood's affidavit was conclusory in just that way. Norwood's statement that there was "no way physically possible for Ms. Wendy Barksdale . . . to have been at [his] residence during the hours specified" was mere opinion testimony unsupported by facts based on what Judge Iscoe called "first-hand knowledge" demonstrating that Norwood had an adequate basis for that opinion. Judge Iscoe reasonably agreed with the government's argument that Norwood's affidavit was "too vague to undermine Barksdale's detailed trial testimony establishing that she was already in his house, asleep [on the top floor of the house], as of 7:00 a.m. on September 21, when [Norwood] left for work."

Further, "while demonstration of the failure to . . . call witnesses can establish ineffective assistance of counsel," for a hearing to be necessary, "we have required an affidavit or other credible proffer as to the allegedly exculpatory nature of the prospective witnesses' testimony." *Jones*, 918 A.2d at 403 (internal quotation marks and brackets omitted). As to the few averments of fact Norwood made based on first-hand knowledge (i.e., his statement that he was away at work

and not at home during the time period identified in his affidavit), I discern no erroneous exercise of discretion in Judge Iscoe's reasoning that, even if found credible after a hearing, those statements would not have exculpated appellant and thereby shown prejudice to him and an entitlement to relief from his counsel's failure to call Norwood as a witness at trial. In short, Judge Iscoe reasonably concluded that appellant did not make an adequate "proffer as to the allegedly exculpatory nature" of Norwood's testimony to warrant a hearing on his motion. *Id.*

For the foregoing reasons, I respectfully dissent from the judgment reversing the denial of appellant's § 23-110 motion without a hearing.