Moses RICE, a/k/a Curtis
Rice, Appellant,

v.

UNITED STATES, Appellee.

Nos. 85–1485, 89–280.

District of Columbia Court of Appeals.

Argued April 18, 1990.

Decided Sept. 21, 1990.

---

Marion E. Baurley, Washington, D.C., appointed by this court, for appellant.

Barbara J. Valliere, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Thomas J. Tourish, Jr., Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEWMAN, BELSON and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

Before us are two consolidated appeals, a direct appeal from appellant's conviction of eight counts arising from two separate episodes and an appeal from a denial without a hearing of appellant's motion to vacate sentence, filed pursuant to D.C.Code § 23–110 (1989), because of alleged ineffective assistance of counsel. Under the principles expounded in *Ramsey v. United States*, 569 A.2d 142 (D.C.1990), we must remand the record for further proceedings on appellant's ineffective assistance claim.[1]

I

A

Appellant was convicted by a jury in 1985 of eight offenses arising out of two separate incidents. Seven of the offenses stem from a robbery attempt on October 13, 1984.[2] That afternoon, three men (at least two of them armed) entered into an apartment in Southeast Washington, demanding "the dope and the money." At trial, appellant was identified as one of the assailants. At the time, the apartment was occupied by six children and at least eleven adults, many of whom were in a back bedroom of the apartment, drinking alcohol and "shooting," or injecting, heroin. Some gunshots rang out and the men fled.

The second incident occurred on November 1, 1984, nineteen days after the shooting at the apartment. A police officer on routine patrol in Northwest Washington observed a group of four people, including appellant, "acting kind of peculiar." Appellant, who noticed the officer sitting in his cruiser, went to a woman in the group, put his arm around her, and walked into a deadend passageway or "airway" nearby. Appellant and the woman "eventually"

---

1. Because the resolution of the contentions raised in appellant's direct appeal may depend on the outcome of his ineffective assistance claim, we hold in abeyance the issues on direct appeal.

2. Specifically, appellant was convicted of first-degree armed burglary with intent to commit assault, D.C.Code §§ 22–1801(a), –3202 (1989), first-degree armed burglary with intent to commit theft, *id.*, armed assault with intent to kill, *id.* §§ 22–501, –3202, three counts of assault with a dangerous weapon, *id.* § 22–502, and carrying a pistol without a license, *id.* § 22–3204.

emerged from the passageway. During an immediate search of the alley, "underneath an old mattress" and among some trash and old clothes, police found a nine millimeter pistol containing shells which matched ballistically those recovered from the scene of the shooting. On the basis of this episode, appellant, who had no license for the weapon, was convicted of carrying a pistol without a license in violation of D.C.Code § 22–3204 (1989).

Appellant presented no witnesses or evidence. In closing argument, defense counsel challenged the credibility of the government witnesses in support of a theory of misidentification in the robbery incident. As to the second incident, defense counsel emphasized the lack of evidence directly showing that appellant ever possessed the handgun recovered in the alley.

### B

On September 30, 1988, appellant, pursuant to D.C.Code § 23–110 (1989), filed a motion to vacate his conviction on the ground that he was denied his sixth amendment right to effective assistance of counsel at trial. Appellant identified five specific alleged deficiencies in his trial lawyer's performance. Most importantly for immediate purposes on this appeal, appellant alleged that trial counsel failed to interview alibi witnesses whose names appellant had provided to him and to search for other potential defense witnesses. In support of his claim that trial counsel failed to interview alibi witnesses, appellant's motion stated that he had provided his trial lawyer with the names, addresses, and phone numbers of two witnesses, appellant's wife, Linda Rice, and a friend named Dock Dukes, who could verify appellant's whereabouts on the afternoon of the shooting at the Southeast Washington apartment. Appellant's motion also stated that had trial counsel spoken with Linda Rice, he would have discovered the name of Marcella Bland, a third witness who could testify as to appellant's whereabouts at the time of the shooting.

Appellant did not rest on these mere assertions, however. As specific evidentiary support for his allegations, appellant appended to his motion signed statements [3] by Marcella Bland, Dock Dukes, and Linda Rice.[4] All three witnesses declared that on October 13, 1984, they spent the day at appellant's home celebrating his birthday with him. Bland and Dukes both stated that appellant's lawyer never contacted them and that they would have testified on appellant's behalf. Ms. Rice declared that although she telephoned appellant's trial counsel, he never questioned her about anything she knew about the case. She also indicated that even though she was prepared to testify on behalf of her husband and was waiting in the witness room during his trial, appellant's lawyer never called her to the stand.

In support of his related allegation that trial counsel had failed to search for other potential defense witnesses, appellant asserted that trial counsel did not hire an investigator to interview potential defense witnesses at the scene of the shooting. As proof of the prejudicial consequences of this failure, appellant appended to his 23–110 motion a signed statement by Judy Creighton, who stated that at about 4:00 p.m. on October 13, 1984, she witnessed three armed men exit the apartment building in which the shooting had occurred. Creighton recognized all three gunmen. She also stated that she knew appellant, and that he was not one of the men she witnessed. Appellant's 23–110 motion asserted that trial counsel, had he sought to

---

3. Although the statements were signed, they were neither notarized nor executed under penalty of perjury. We note that documents in which the declarant swears or affirms the truth of the statement ordinarily carry more weight than those in which the declarant does not. The government does not challenge the significance of the statements because of their failure to be sworn.

4. At oral argument, appellate counsel provided us with a copy of Linda Rice's statement, which is not part of the record on appeal. Appellant referred to this statement in his 23–110 motion. Although it appears that Ms. Rice's statement was inadvertently omitted from the record provided to us, for purposes of this appeal we treat it as part of appellant's 23–110 motion.

locate defense witnesses, could have done so with "ease"; indeed, the investigator hired for purposes of verifying appellant's ineffective assistance contentions "was able to find Ms. Creighton on the first day that he went to the crime scene to investigate."

In a short written order, the trial court denied appellant's 23–110 motion without a hearing. The court did not determine whether appellant's trial lawyer was in fact deficient; instead, the court concluded that appellant had "proffered no credible evidence that there is a reasonable probability that the results of the trial could have been any different, but for his counsel's alleged errors."[5]

## II

When a prisoner properly brings a collateral motion to vacate sentence,[6] the trial court must hold a hearing "[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." D.C.Code § 23–110(c). In *Ramsey v. United States, supra,* a case also involving an ineffective assistance of counsel claim, we set forth the principles which control the application of this provision:

> There is a presumption that a trial court presented with a § 23–110 motion should conduct a hearing. In *Pettaway [Pettaway v. United States,* 390 A.2d 981 (D.C. 1978)] we concluded that, in order to uphold a denial of a § 23–110 motion without a hearing, the reviewing court must be able to state that under no circumstances could the petitioner establish facts warranting relief. In giving practical effect to this rule, we have recognized three categories of claims that do not merit hearings: (1) vague and conclu-

sory allegations, (2) palpably incredible claims, and (3) assertions that would not merit relief even if true. [Where a claim] is neither vague nor conclusory nor palpably incredible.... [t]he question ... is whether we can say with certainty that appellant would not be entitled to relief even if his allegations were true.

*Ramsey, supra,* 569 A.2d at 147 (citations and internal quotation marks omitted).

The validity of appellant's. ineffective assistance of counsel claim must be evaluated in light of the by now familiar standards of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, appellant must establish that counsel's performance was deficient under prevailing professional norms. *Id.* at 687, 688, 104 S.Ct. at 2064, 2064–65. Second, he must establish that this deficient performance prejudiced his defense. *Id.* at 687, 104 S.Ct. at 2064. Prejudice will be found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

Here, it was the prejudice prong of *Strickland* on which the trial court based its summary denial of appellant's 23–110 motion. The court stated that appellant had "proffered no credible evidence that there is a reasonable probability that the results of the trial could have been any different, but for his counsel's alleged errors." On the record here, we are unable to affirm on the basis of this reasoning. The exculpatory value of the evidence proffered by appellant turns at bottom on the credibility of the four witnesses specifically identified in his 23–110 motion and whose proposed testimony was evidenced by

---

**5.** The trial judge noted that appellant had been identified as the gunman by four witnesses and was later "found" with the same pistol that had discharged the shots at the scene of the attempted robbery. *See infra* notes 8 & 9.

**6.** Although this court strongly discourages the use of collateral attack as a substitute for direct appeal, *see Head v. United States,* 489 A.2d 450, 451 (D.C.1985), an allegation of ineffective assistance of counsel such as that raised here "is

typically not correctable on direct appeal and is therefore an appropriate ground for a collateral attack." *Ramsey, supra,* 569 A.2d at 146. Here, counsel appointed by this court to handle the direct appeal engaged in a significant investigation of the ineffectiveness of trial counsel issue and filed the 23–110 motion during the pendency of the direct appeal. In so doing, she adhered to the procedure announced in *Shepard v. United States,* 533 A.2d 1278, 1280 (D.C.1987).

signed statements. We can discern no grounds for negating the credibility of those witnesses merely on the basis of their written statements. With an evidentiary hearing, the court could more meaningfully determine whether the evidence proffered by appellant was credible or not.[7] *See Samuels v. United States*, 435 A.2d 392, 395 (D.C.1981) (per curiam) (court erred in denying without a hearing 23–110 motion where appellant's instructions to trial counsel were in dispute; "court could not conclusively resolve the dispute without a hearing, for witness credibility—typically reflected best through live testimony under oath—is key"). Thus, in concluding that appellant had proffered "no credible evidence," the trial court appears to have assumed the answer to the very question which an evidentiary hearing could illuminate.

Nor can we rule at this point that, as a matter of law, the evidence of appellant's guilt was so strong that there can be no reasonable probability that the exculpatory evidence proffered in appellant's 23–110 motion, whatever its strength, could have raised a reasonable doubt in the minds of the jurors. The alibi evidence directly refuted the charge that appellant participated in the robbery. The government's case consisted largely[8] of identifications of appellant by the government's eyewitnesses,[9] whose credibility a jury might have assessed differently if confronted with directly conflicting alibi evidence. In addition, the asserted strength of the government's case may itself be a product of trial counsel's ineffectiveness. If it is true, as appel-

lant also alleges, that trial counsel failed to interview government witnesses and to cross-examine them adequately, the government's case might in fact be considerably weaker than it appears on the record before us.

Since on the basis of the trial court's order rendered without a hearing, we are unable to "say with certainty that appellant would not be entitled to relief even if his allegations were true," *Ramsey, supra,* 569 A.2d at 147, we must remand the record for further proceedings on appellant's § 23–110 motion.

*So ordered.*

---

7. The government argues that a jury might have found both Linda Rice, because of her bias in favor of her husband, and Dock Dukes, because of his prior conviction for armed robbery, to be incredible witnesses. Although this certainly was and is a possibility, these facts alone do not warrant conclusive credibility determinations. The government does not advance the argument that either Marcella Bland or Judy Creighton is presumptively incredible.

8. The only incriminating evidence which did not depend on the credibility of these eyewitnesses was appellant's possession of the gun found underneath the mattress in the passageway on November 1, 1984. However, the evidence linking appellant to the gun on that day,

apart from the robbery incident in question, was not particularly strong. Indeed, one of the issues in appellant's direct appeal is whether the evidence was sufficient to sustain his conviction for carrying a pistol without a license as a result of the November 1 episode.

9. Although four in number, the identification witnesses were all occupants of an apartment in which people had assembled to inject heroin. None of the witnesses had any previous acquaintance with appellant (other than one witness's chance prior street encounter), and three of them were impeached with either inconsistent testimony they gave before the grand jury or prior criminal convictions.