Ricky READY, Appellant,

v.

UNITED STATES, Appellee.

No. 91–CO–714.

District of Columbia Court of Appeals.

Argued June 3, 1992.
Decided Feb. 5, 1993.

Cheryl D. Stein, Washington, DC, appointed by this court, for appellant.

Leslie Ann Wise, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, and Thomas J. Tourish, Jr., Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before ROGERS, Chief Judge, SULLIVAN, Associate Judge, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

Appellant seeks reversal of the trial court's decision to deny without a hearing

his § 23–110 [1] motion alleging ineffective assistance of counsel. We affirm.

In 1980, after a jury trial, appellant was convicted of second-degree murder while armed, assault with a dangerous weapon, and carrying a pistol without a license. A summary of the evidence presented at appellant's trial is set forth in this court's opinion affirming his convictions. *Ready v. United States*, 445 A.2d 982 (D.C.1982), *cert. denied*, 460 U.S. 1025, 103 S.Ct. 1279, 75 L.Ed.2d 498 (1983). In 1991, appellant filed a motion alleging ineffective assistance of counsel based primarily on the ground that his trial counsel failed to secure at trial the presence of Mandell Cooper, an eyewitness who appellant claims would have presented exculpatory testimony.[2] The trial court denied appellant's motion without a hearing. We now consider both the trial court's decision not to hold a hearing and the decision to deny the claim.

■■■ There is a presumption in favor of holding a hearing on a § 23–110 motion alleging ineffective assistance of counsel that requires an inquiry into matters outside the record. *Gaston v. United States*, 535 A.2d 893, 898 (D.C.1988); *Gibson v. United States*, 388 A.2d 1214, 1216 (D.C. 1978). However, the filing of such a § 23–110 motion does not automatically require the trial court to conduct a hearing. *Gibson*, *supra*, 388 A.2d at 1216–17. Where the existing record provides an adequate basis for disposing of the motion, the trial court may rule on the motion without holding an evidentiary hearing. D.C.Code § 23–110; *Ellerbe v. United States*, 545 A.2d 1197, 1198–99 (D.C.), *cert. denied*, 488 U.S. 868, 109 S.Ct. 174, 102 L.Ed.2d 144 (1988). Moreover, the court has recognized that a hearing is unnecessary when the motion consists of (1) vague and conclusory allegations, (2) palpably incredible claims,

or (3) allegations that would merit no relief even if true. *Ramsey v. United States*, 569 A.2d 142, 147 (D.C.1990) (citation omitted).

To prevail on a claim of ineffective assistance of trial counsel, the claimant must demonstrate two things: (1) deficient performance on the part of his trial counsel, and (2) prejudice as a result of that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In considering the first, "[j]udicial scrutiny ... must be highly deferential.... [A] Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065. In considering the second, the court must find that appellant has shown "there is a reasonable probability that, but for counsel's unprofessional errors, the result [at trial] would have been different." *Id.* at 694, 104 S.Ct. at 2068.

■■■ We conclude that appellant's motion, which was based on the unsubstantiated assertion that he suffered prejudice as a result of his trial counsel's decision not to call Cooper as a witness, was too speculative to warrant a hearing. Since appellant's motion was deficient as to the prejudice prong of *Strickland*, we need not reach the issue of his counsel's deficient performance. *See, e.g., Griffin v. United States*, 598 A.2d 1174, 1176 (D.C.1991) ("*Strickland* ... suggest[s] that it is sometimes efficacious to address the prejudice prong first since without prejudice there can be no ineffective assistance of counsel."); *Strickland*, *supra*, 466 U.S. at 697, 104 S.Ct. at 2069. Therefore, we hold that the trial court did not err in denying appellant a hearing on the basis of the information then available to the trial court.

---

1. D.C.Code § 23–110 (1989).

2. Ordinarily, a claim of ineffective assistance of counsel must be raised at the time of the direct appeal if the appellant "demonstrably knew or should have known of the grounds for alleging counsel's ineffectiveness." *Shepard v. United States*, 533 A.2d 1278, 1280 (D.C.1987). Although the rule mandated by *Shepard* was applied prospectively and thus does not affect appellant's claim, we note that the absence of Cooper at trial, the basis of appellant's allegation of ineffective assistance of counsel, was addressed in our opinion affirming his convictions. Yet, approximately nine years elapsed after we affirmed appellant's convictions before he filed this motion alleging ineffective assistance of counsel.

The basis for appellant's allegation of prejudice rests solely on the fact that Cooper was identified as a *Brady* [3] witness by the government. However, appellant has not offered a credible indication as to what that testimony might entail. Rather, appellant merely quoted the prosecutor, who said:

I told [trial counsel] that [Cooper and another] may give testimony to the effect that Tyrone Barnett was the shooter on the night of the offense.

Nor has he offered any basis for concluding that there is *any* possibility that Cooper could provide such testimony. Indeed, we do not even know that Cooper is even alive at this point. The absence of an affidavit or other credible proffer [4] as to the allegedly exculpatory nature of Cooper's testimony persuades us that the trial court did not err in declining to hold a hearing. *See Sykes v. United States,* 585 A.2d 1335, 1338 (D.C.1991); *see, e.g., Smith v. United States,* 608 A.2d 129, 132 (D.C. 1992) (reversing denial without a hearing of motion alleging that counsel's failures to adequately investigate location of incident, prepare defense, and examine witnesses resulted in presentation of uncorroborated defense where new counsel "proffered physical evidence regarding the location of the incident" and "proffered the statements of eleven witnesses, each of whom would have confirmed some portion of appellant's version of the incident"); *Wright v. United States,* 608 A.2d 763, 766 (D.C. 1992) (reversing denial without hearing of motion alleging ineffectiveness where appellant asserted in affidavit facts supporting his claim); *Rice v. United States,* 580 A.2d 119, 121 (D.C.1990) (reversing denial without a hearing where allegation of ineffective assistance for failure to prepare alibi defense was supported by list of alibi witnesses who signed statements corroborating alibi and attesting that trial counsel never interviewed them); *Ramsey v. United States,* 569 A.2d 142, 149 (D.C.1990) (affidavit of witness raising material issue of fact considered significant factor in concluding that evidentiary hearing was required to resolve alleged factual dispute); *see also* 1 CRIMINAL PRACTICE INSTITUTE, TRIAL MANUAL 11.17 (1991) ("In order to obtain a hearing, it is advisable to substantiate the allegations of the motion by affidavits or other documents.").

Put succinctly, we are not persuaded that the fact that evidence *might* be *Brady* material is sufficient to require a hearing in every case. Under the *Brady* rule, evidence in the possession of the government which is material and favorable to the accused must be disclosed. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). "[B]ecause the significance of an item of evidence can seldom be predicted accurately until the entire record is complete, the prudent prosecutor will resolve doubtful questions in favor of disclosure." *United States v. Agurs,* 427 U.S. 97, 108, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976). Thus, after the record is complete, not all evidence identified by the government as *Brady* information will necessarily be material to the defense.

Moreover, the record does contain Cooper's grand jury testimony. To the extent that it reflects what Cooper's testimony may have been, it provides appellant no support; in fact, it undercuts his claim. The trial court reasoned that Cooper's testimony at trial would have been either (1) consistent with his grand jury testimony and therefore not exculpatory, or (2) inconsistent with his grand jury testimony and therefore dubious, given that it would have been subject to impeachment.

Cooper told the grand jury that he saw "a whole lot of people" in the car, and that at the time he recognized only the driver and the individual who had been sitting in the back seat behind the passenger side

---

**3.** *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

**4.** *See Gillis v. United States,* 586 A.2d 726, 728 (D.C.1991) (defense counsel revealed at sentencing that witness not called at trial presented

before he got out of the car.[5] When he got out of the car, "[h]e went under his coat, and everybody ran." As Cooper ran, he heard gunshots.

With respect to the possibility that Cooper's trial testimony would have been essentially the same as his grand jury testimony, we are persuaded by the trial court's reasoning that if Cooper presented testimony consistent with what he told the grand jury, there is no reasonable probability that the result would have been different. *Ready v. United States*, 445 A.2d at 990 n. 16; *see United States v. Frost*, 502 A.2d 462, 464 (D.C.1985), *cert. denied*, 479 U.S. 836, 107 S.Ct. 134, 93 L.Ed.2d 77 (1986). As for the latter, the hypothetical possibility that Cooper's trial testimony may have been different than that presented to the grand jury is an issue we do not reach for the reasons set forth above: appellant has offered no indication beyond sheer speculation that such would be the case. Thus, Cooper's grand jury testimony only undercuts appellant's already deficient showing that he is entitled to a hearing. *See White v. United States*, 484 A.2d 553, 558–89 (D.C.1984) (affirming denial of a hearing on claim of ineffective assistance of counsel where failure to prepare alibi defense, which was supported by an affidavit of the alibi witness, was too vague to support claim of ineffective assistance and contradicted appellant's testimony at trial).[6]

Accordingly, the judgment of the trial court is

Affirmed.

ROGERS, Chief Judge, dissenting.

The majority affirms the denial of a § 23–110 motion without a hearing on the ground that appellant's motion "was based on the unsubstantiated assertion that he suffered prejudice as a result of his trial counsel's decision not to call [Mandell] Cooper as a witness, [and therefore the contention] was too speculative to warrant a hearing."[1] Majority opinion at 234. The majority further suggests that "[t]he basis for appellant's allegation of prejudice rests solely on the fact that Cooper was identified as a *Brady* witness by the government" and "appellant has not offered a credible indication as to what that testimony might entail." *Id.* In so doing, the majority mischaracterizes appellant's motion and the record evidence in support of his claim that Cooper would have offered exculpatory evidence. In addition, the majority, like the motions judge, adopts a false dichotomy regarding Cooper's grand jury testimony and misconstrues or ignores relevant law. Accordingly, I respectfully dissent.

In my view there are four flaws in the majority's analysis. First, while acknowledging the presumption in favor of holding a § 23–110 hearing, the majority ignores the law regarding the circumstances in which a hearing is required. Second, the majority mischaracterizes appellant's motion as deficient and bare-boned. Third, the motion underestimates the exculpatory value of Cooper's testimony, and thereby distorts the prejudice prong of *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Fourth, the majority fails to acknowledge the significance of the fact that the motions judge was not the trial judge who presided at the criminal trial.

First, D.C.Code § 23–110 provides, in pertinent part:

testimony at a preliminary hearing and resulted in dismissal of the charges).

5. Although Cooper did not identify the individual in the back seat, there was testimony at trial that Tyrone Barnett got out of the car.

6. Appellant also *asserts* that his trial counsel failed to properly prepare two witnesses for trial. His assertion is based primarily on the claim that their testimony was not as well presented as it could have been. We find this

assertion vague and conclusory. Therefore, it did not require a hearing. *See Pettaway v. United States*, 390 A.2d 981, 984 (D.C.1978).

1. Vernon Cooper, who was Mandell Cooper's thirteen year-old brother, testified at trial. In addition, Darnell Cooper (another brother of Mandell) testified as a government witness, but could not identify the gunman. In this opinion, all references to "Cooper" are to Mandell Cooper, who did not testify at appellant's trial.

Unless the motion and files and records of the case *conclusively show* that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto.

D.C.Code § 23–110(c) (1989 Repl.). Thus, the plain language of the statute requires a prompt hearing when the motion, files, and record do not conclusively show that appellant was not entitled to relief. The court has interpreted this language to mean that "[a]s a rule, ... in denying a § 23–110 motion without a hearing, the court should be able to say 'that under no circumstances could the petitioner establish facts warranting relief.'" *Gaston v. United States*, 535 A.2d 893, 899 (D.C.1988) (citation omitted).

Review of the instant case must begin with the understanding that "[t]o uphold the denial of a § 23–110 motion without a hearing, this court must conclude that under no circumstances could the movant establish facts warranting relief." *Wright v. United States*, 608 A.2d 763, 766 (D.C. 1992). Appellant's motion does not fall into one of the deficient categories in which "the allegations of the motion itself are vague and conclusory, are wholly incredible, or if true would merit no relief." *Gibson v. United States*, 388 A.2d 1214, 1216 (D.C.1978). In addition to a thirty-page motion setting forth appellant's specific contentions, the contentions are supported by Cooper's grand jury testimony, his signed statement to the defense investigator, and the trial record showing defense counsel's failure to have admitted into evi-

dence key grand jury testimony.[2] The allegations contained in appellant's motion are neither vague nor conclusory.[3] Nor are they "wholly incredible" since Cooper appeared to have no reason to lie for appellant, his grand jury testimony was given under oath, and he signed the pretrial statement that he gave to the defense investigator. Finally, for reasons discussed below, appellant would be entitled to relief if he was denied the effective assistance of trial counsel as a result of defense counsel's failure to secure the introduction of Cooper's testimony at trial.[4]

In addition, the majority ignores the fact that the court has held that the presumption in favor of a hearing is strengthened in certain circumstances, several of which exist here. For instance, the court has held that the necessity for a hearing is increased where the § 23–110 motion alleges ineffective assistance of counsel. *See Miller, supra* note 4, 479 A.2d at 869–70; *Hockman v. United States*, 517 A.2d 44, 48 (D.C.1986). This is so because such claims typically require an inquiry into matters outside the record. This concern was clearly implicated by appellant's motion. Although the motions judge agreed with the trial judge that defense counsel's conduct with respect to Cooper's testimony was motivated by tactical concerns, necessary evidence of counsel's tactical decision cannot be gleaned from the record. An evidentiary hearing was needed to create a record of the efforts and reasons for defense counsel's decision, if there was one, not to call Cooper as a witness. *See Gray v. United*

2. In addition to Cooper's grand jury testimony, defense counsel also sought, unsuccessfully for failure to lay a proper foundation, to use Vernon Cooper's grand jury testimony to refresh his recollection. Vernon Cooper had testified before the grand jury that one of the men at the dice game had stated after the fight, "I'm going to get my gun." The defense sought to demonstrate that the person who made that statement—presumably Paul Fitzhugh or Tyrone Barnett since they had been there—had been the shooter the following day.

3. *Compare with Pettaway v. United States*, 390 A.2d 981 (D.C.1978) (summary denial affirmed where movant merely stated that he had pleaded guilty because attorney promised him a light

sentence); *Ellerbe v. United States*, 545 A.2d 1197 (D.C.1988) (summary denial appropriate where movant merely alleged ineffective assistance of counsel but attached neither an affidavit nor a list of witnesses to support his claim).

4. *See Miller v. United States*, 479 A.2d 862, 870 (D.C.1984) (where counsel failed to secure witness's testimony at trial, summary denial reversed because "record fail[ed] to establish conclusively that counsel was not grossly incompetent"); *Ramsey, supra*, 569 A.2d at 148 (§ 23–110 required a hearing where movant advanced a "colorable claim" that trial counsel was insufficient, alleged prejudice, and presented affidavit raising a "material factual issue").

*States,* 617 A.2d 521, 525 (D.C.1992) ("presumption of reasonable professional conduct, though strong, does not amount to blind faith.... When the record provides no evidence of a reasoned tactical decision by counsel, and when the failure to make such a decision could reasonably be regarded as ineffectiveness, the trial court must independently determine whether such a decision was made"); *Gillis, supra,* 586 A.2d at 728 (remanded for evidentiary hearing where trial court deemed counsel's reasons for not presenting certain evidence "tactical" rather than exploring the soundness of them); *Smith v. United States,* 608 A.2d 129, 131 (D.C.1992) ("The court has long observed that claims of ineffective assistance of trial counsel raised pursuant to D.C.Code § 23–110 will usually require a hearing since the trial record will not typically provide the trial court, or this court, with a basis on which to determine whether allegations of ineffectiveness can be rationally explained as reasonable tactical decisions by trial counsel").

The court also has made clear that a hearing is more likely needed when the motions judge is not the trial judge. *Gaston, supra,* 535 A.2d at 900. This is because the motions judge "ha[s] no recollection of the proceedings and [i]s not familiar with the actual events that transpire [ ]." *Id.* Finally, the court has stated that "any question regarding the appropriateness of a hearing should be resolved in favor of holding a hearing," *Gillis v. United States,* 586 A.2d 726, 728 (D.C.1991), since § 23–110 is "virtually a remedy of last resort." *Miller, supra* note 4, 479 A.2d at 869. As discussed below, the allegations and supporting documentation for the motion presented at worst a close call requiring a hearing.

Second, the majority opinion ignores the full content of appellant's motion. *See* majority opinion at 234, 235 (appellant relies on the "unsubstantiated notion that he suf-

fered prejudice," that the support for his allegation of prejudice rests "solely" on the fact that Cooper was identified as a *Brady* witness, that "appellant has not offered a credible indication as to what that testimony [of Cooper] might entail," and that appellant's proof consisted "merely" of quoting the prosecutor who stated that Cooper might identify Barnett as the shooter). In fact, appellant's motion is properly characterized, in view of our caselaw, as quite comprehensive. Appellant's § 23–110 motion is thirty pages in length, and it reviews the evidence at trial, the inconsistencies in the government's witnesses' testimony, and the failure of defense counsel either to secure Cooper's testimony or to have the transcript of his grand jury testimony introduced into evidence. In addition, the motion and record contained two additional forms of proof of the nature of Cooper's likely trial testimony.

Appellant attached to his motion a copy of Cooper's grand jury testimony. Cooper testified before the grand jury that he saw a person get out of the car from the rear passenger's door, reach under his coat, and that he then heard three gun shots. Cooper also testified that the driver and the man who got out of the back seat of the car had been at the dice game the night before. Even if there was other testimony at trial about another shooter, the motions judge was not in a position to determine that the record conclusively shows that Cooper could not provide exculpatory evidence for appellant. It would not be unreasonable to expect Cooper to testify that it was the rear passenger who had been the shooter, and not appellant, whom government witness Paul Fitzhugh had identified as sitting behind the driver; appellant also was not one of the two men who had been at the dice game the night before.[5]

In addition, Cooper's signed pretrial statement to the defense investigator was a part of the trial record.[6] The majority

<hr>

5. No one at trial testified that appellant had been at the dice game and fight the night before, and the government concedes this point in its brief.

6. During discussion of defense counsel's request to admit Cooper's grand jury testimony into evidence in Cooper's absence, the trial judge permitted defense counsel to make a proffer of Cooper's testimony, and defense counsel read

opinion makes no reference to this statement. In his statement, Cooper conceded that he had not seen the gunman fire his gun, but he stated that he thought the shooter was the person who had gotten out of the rear passenger door. Paul Fitzhugh, in his testimony for the government, stated Tyrone Barnett sat in the rear passenger seat.

The record before the motions judge therefore indicated that, based on Cooper's grand jury testimony and his statement to the defense investigator, Cooper was, as the prosecutor indicated, a *Brady*[7] witness for appellant. Consequently, the motions judge could not properly conclude that appellant had failed to make a credible proffer of Cooper's likely trial testimony. Nor could the motions judge deny a hearing on the basis that "appellant had offered 'no credible evidence,'" since to do so would "have assumed the answer to the very question which an evidentiary hearing could illuminate." *Rice v. United States,* 580 A.2d 119, 123 (D.C.1990). There also was no basis on which the motions judge could deny a hearing because of the strength of the government's evidence. *Id.* (also pointing out that "asserted strength of the government's case may itself be a product of trial counsel's ineffectiveness").

Thus, the majority's emphasis on the absence of an affidavit summarizing Cooper's trial testimony elevates form over substance. *See* majority opinion at 235. While affidavits are sometimes attached to these motions,[8] there is no requirement that other documents cannot serve the same purpose as an affidavit. *See Gray,*

*supra,* 617 A.2d at 523 (finding three signed statements and one letter attached to § 23–110 motion "sufficiently precise and detailed enough" to warrant a hearing); *Rice, supra,* 580 A.2d at 121 n. 3 (movant entitled to hearing on the basis of signed statements from witnesses even though statements not notarized or executed under penalty of perjury); *Gillis, supra,* 586 A.2d at 726 (remanded for hearing even though no transcript, affidavit, or summary of what witnesses would say was introduced).[9] Here appellant presented a witness' sworn testimony and his pretrial statement made to a defense investigator, both of which were a part of the trial record. There is nothing talismanic about an affidavit, and the cases on which the majority relies for the proposition that summary denial is appropriate where no affidavit or proffer is attached are inapposite.

For example, the majority cites *Gillis, supra,* 586 A.2d 726, to support the conclusion that appellant failed to present a credible proffer. *See* majority opinion at 235. But, in *Gillis,* this court reversed the summary denial, rejecting the conclusion that because trial counsel had stated that there were "reasons" why certain evidence was not presented he was insulated by the tactical decision protection of *Strickland, supra,* 466 U.S. at 690–91, 104 S.Ct. at 2065–67. The court held that a cursory branding of trial counsel's decision not to call certain witnesses as "tactical," was insufficient under the statute and a more searching review, by means of a hearing, of counsel's reasoning was necessary.[10] *Id.*

into the record a statement given by Cooper to the defense investigator.

**7.** *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

**8.** *See, e.g., Miller, supra* note 4, 479 A.2d at 869; *Ramsey v. United States,* 569 A.2d 142, 145 n. 10 (D.C.1990).

**9.** *See also Session v. United States,* 381 A.2d 1, 2 n. 7 (D.C.1977) (using permissive rather than mandatory language—the motion "should be" supported by an affidavit); *Gibson, supra,* 388 A.2d 1214 (remanded for hearing where appellant claimed ineffective assistance for failure to

make suppression motions; no mention of affidavits having been submitted); *Hockman, supra,* 517 A.2d 44 (remanded for hearing; no mention of affidavits having been submitted); *Gaston, supra,* 535 A.2d 893 (same).

**10.** *Gillis'* rejection of conclusory statements about counsel's behavior as tactical also underscores the problem with the motions judge's endorsement of the trial judge's speculation that defense counsel was attempting to introduce Cooper's grand jury testimony because he probably has impeachable convictions and hence would not be a credible witness. In the instant case, even assuming that Cooper has impeachable convictions, the key witnesses for the gov-

Likewise, the majority's reliance on *Sykes v. United States,* 585 A.2d 1335 (D.C.1991), is misplaced since the movant in *Sykes* merely attached his own self-serving affidavit reciting that a woman would corroborate his testimony that she was in fact the one who had sold the drugs to the undercover officer, but offered no proof that the woman had ever confirmed his story or would be willing to testify about it. *Id.* at 1337. By contrast, appellant attached to his motion the transcript of Cooper's grand jury testimony and Cooper's signed statement to the defense investigator. While not affidavits, these supporting documents clearly amount to a more credible proffer than that submitted in *Sykes.*

Moreover, the court's decision in *Sykes* was expressly premised on the observation that in order to exculpate Sykes, the uncalled witness would have to inculpate herself by admitting that it was in fact she who had sold the drugs. *Id.* at 1338 The court concluded that such a scenario was improbable and that it was more likely the witness would deny the allegations or invoke her Fifth Amendment privilege against self-incrimination. *Id.* Neither circumstance exists in the instant case. Indeed, the nature of Cooper's role in the events giving rise to the charges against appellant increases the exculpatory value of his testimony. Cooper and David Wise were the two men who were shot at along with the victim, Darryl Woodson, and were actually the complainants on the assault with a deadly weapon charges that appellant faced; neither inculpated appellant.[11]

The majority's reliance on *Rice, supra,* 580 A.2d 119, to support the conclusion that appellant's failure to attach an affidavit or "credible proffer" to his motion warranted summary dismissal, is to no avail. *See* majority opinion at 235. In *Rice,* this court reversed the trial court for failing to

conduct an evidentiary hearing. The movant had submitted three signed statements from witnesses who claimed they would have provided alibi testimony and one from a woman who claimed that she saw the shooters emerge from the building and that the movant was not one of them. *Id.* at 121. This court concluded that a hearing was required even though none of the statements submitted by Rice was in the form of affidavits or sworn testimony and the government's evidence was strong. *Id.* at 123. By contrast, appellant offered Cooper's sworn grand jury testimony as well as his statement to the defense investigator. In addition, the government's case against Ready was far less compelling than in *Rice,* where there were four witnesses who identified the movant as the gunman and the movant was later found with the gun used in the attempted robbery. *Id.* at 122 n. 5. The government's case against appellant consisted of the testimony of Paul Fitzhugh and Tyrone Barnett that appellant was the gunman; Fitzhugh was the brother of the co-defendant and Barnett, who testified that he and Paul Fitzhugh were like brothers, was indirectly identified by Cooper as the shooter.

Third, the majority underestimates the potential exculpatory value of Cooper's testimony and thus incorrectly evaluates the prejudice prong of the *Strickland* analysis. With regard to his grand jury testimony, the majority states:

> To the extent that it reflects what Cooper's testimony may have been, it provides appellant no support; in fact, it undercuts his claim.

The trial court [i.e., the motions judge] reasoned that Cooper's testimony at trial would have been either (1) consistent with his grand jury testimony and therefore not exculpatory, or (2) inconsistent

ernment were also subject to impeachment for prior inconsistent statements as well as bias, and guilt turned on the jury's assessment of their credibility.

**11.** David Wise testified that the driver and the person in the back seat on the passenger's side were the shooters. Wise identified the passenger as Tyrone Barnett. Wise had not previously

known appellant. Although on cross-examination, Wise misidentified one of the Fitzhughs as Tyrone Barnett, Wise's testimony did not inculpate appellant. Wise testified that he had a good chance to see who was in the car and that appellant was not in the car. Wise also testified, contrary to Fitzhugh and Barnett, that the driver of the car, and not appellant, had yelled "Get him."

with his grand jury testimony and therefore dubious, given that it would have been subject to impeachment.

*See* majority opinion at 235. This is a false dichotomy. If Cooper had testified at trial consistently with his grand jury testimony it does not follow that he could not have provided exculpatory evidence for appellant. Cooper's testimony at trial did not have to be limited to his grand jury testimony in order to be consistent with it; clearly, his testimony before the grand jury left room for amplification. For example, when Cooper testified before the grand jury that there were a lot of people in the car, the obvious follow-up question was, "Who was in the car?" This question was not asked by the prosecutor; appellant's counsel was not present. Moreover, when Cooper's grand jury testimony is read in conjunction with his statement to the defense investigator, it follows that Cooper would have identified Tyrone Barnett as the shooter. Cooper testified before the grand jury that the man who got out of the car emerged from the rear passenger door and that that person had been at the dice game the night before; there was no evidence that appellant was among those who

had been at that dice game. In his statement Cooper said he thought that the person who got out of the car had been the gunman. In view of the unrefuted testimony at trial that it was Barnett who had been sitting in the rear passenger's seat and who had emerged from the car, as well as Barnett's admission that he and Paul Fitzhugh had been at the dice game the night before, a jury crediting Cooper's testimony could reasonably infer that appellant was not the gunman.[12]

By underestimating the exculpatory value of Cooper's testimony, the majority opinion distorts the analysis of *Strickland's* prejudice prong. The determination of appellant's guilt revolved exclusively around credibility issues. Two government witnesses identified appellant as the gunman; one defense witness, Wise, claimed appellant was not in the car, and another witness, Cooper, would have testified that Barnett was the shooter. The two government witnesses were impeached during cross-examination, and each could easily be considered biased.[13] Under these circumstances, the motions judge was not in a position to conclude, in the absence of a

---

12. Vernon Cooper, *see supra* note 1, testified that the shooter returned to the front passenger seat. As noted, all four occupants of the car who testified at trial confirmed that appellant was sitting in the back seat behind the driver. In addition, appellant presented six alibi witnesses, who testified that during the evening of July 14, 1979, and the early morning hours of July 15, 1979, appellant was at a birthday party for his brother. *Ready v. United States,* 445 A.2d 982, 985 (D.C.1982).

13. Both Paul Fitzhugh and Tyrone Barnett were impeached at trial. Paul Fitzhugh testified that his brother Henry, the co-defendant, had only fired his gun into the air and not at the three men running into the apartment building. He was impeached with his grand jury testimony that Henry had fired five or six shots in the direction of where the boys were. In addition, Paul Fitzhugh's testimony was rather confused at times. For instance, on direct he testified that after the shooting his brother Henry had stated, "We fired them up." When pressed about this statement and why he had not previously mentioned it to the prosecutor or grand jury, he responded that he had "made it up. . . . He said something. I ain't understand what he said when we left, but I just made that up."

Tyrone Barnett was also impeached with inconsistent statements he had made. On cross-

examination, he testified that he did not remember whether he had heard Henry Fitzhugh say, "I got one. He said, ouch." Defense counsel then presented his grand jury testimony in which he had attributed the statement, "Did you see that guy grab his back and holler ouch?" to Henry Fitzhugh.

Defense counsel also demonstrated bias on the part of the witnesses who inculpated Ready. As for Barnett, he testified before the grand jury under a grant of use immunity. Barnett also admitted that the Fitzhugh family was like a part of his own, and that Paul was like a brother to him. Paul Fitzhugh was also shown to be biased. In addition to the obvious source of bias—that he was close to his brother Henry— he conceded that he too had been arrested and locked up in connection with the instant case. At one point he even stated that he had been told by the prosecutor that if he appeared before the grand jury, all the charges against him would be dropped, even if he lied. Furthermore, each of the four occupants of the car who inculpated Ready (Barnett, the Fitzhughs' cousin, and Paul and Henry Fitzhugh) all had an obvious reason to do so—to protect the co-defendant Henry Fitzhugh from being found to be the shooter.

hearing, that Cooper's testimony would not damage the credibility of the government's key witnesses and exculpate appellant. At the very least, it could have called into question the reliability of Barnett's self-serving identification of appellant as the gunman when Barnett was placed in the rear of the car himself. Put otherwise, Cooper's testimony could have altered the jury's evaluation of the credibility of the government's key witnesses' identification of appellant as the gunman, and, therefore, because the files and records do not "conclusively" show that appellant was entitled to no relief, a hearing was required before appellant's motion could be denied. *See Rice, supra,* 580 A.2d at 123 ("With an evidentiary hearing, the court could more meaningfully determine whether the evidence proffered by appellant was credible or not").

Fourth, the majority opinion fails to acknowledge the significance of the distinction between summary denial of a § 23–110 motion by a motions judge as opposed to the judge who presided at the trial. (Throughout the opinion, the majority refers to the motions judge as the "trial court.") The caselaw is clear that the distinction has consequences for the degree of deference that this court should accord to the motions judge's decision. As the court explained in *Sykes, supra,* 585 A.2d at 1340, deference is typically given to the trial judge's decision where our review is for abuse of discretion because the trial judge was present at the trial.[14] By contrast, the motions judge, not having presided at appellant's trial, is in no better position than this court in reviewing the files and records in this case. Reading the transcripts cannot resolve the key credibility issues. Therefore, the motions judge's summary denial of appellant's motion is not entitled to the usual deference given by this court to a discretionary decision. Moreover, the distinction between a trial

judge and motions judge is significant not only because it decreases the appropriateness of this court's heightened deference but because the motion judge's lack of familiarity with the case increases the need for a hearing on the motion. *See Gaston, supra,* 535 A.2d at 900 (reversing motion judge's summary denial, noting that "he had no recollection of the proceedings and was not familiar with the actual events that transpired. In these circumstances, the lack of a hearing becomes especially significant").

Accordingly, I would reverse the summary denial and remand the case for a hearing.

---

**14.** In *Sykes, supra,* 585 A.2d at 1340, the court stated:

> This rule is a salutary one, for the trial judge, who has seen the defense attorney in action and watched the evidence unfold, is in a far better situation than an appellate court to

determine whether there is any appreciable possibility that a hearing could establish either constitutionally defective representation or prejudice to the defendant in the *Strickland* sense.

585 A.2d at 1340.